OPINION
{¶ 1} Matthew L. Werfel ("Appellant"), appeals his conviction on two counts of menacing by stalking, felonies of the fourth degree.
 {¶ 2} Appellant and Vicky Robertson ("Robertson") were married and divorced twice. During the time between their first and second marriage, they had two children. Between their second divorce, in 1998, and March of 2000, appellant sent some thirty-two letters to either Robertson's house or place of business. The letters were variously addressed to either Robertson, her children (two of which were fathered by appellant), or her brother, Dave Robertson.[1] Although the letters were many times cryptic and non-sensical, they also contained language which made Robertson feel threatened. In conjunction with the letters, appellant engaged in a series of strange and, sometimes, alarming activities which contributed to the charges underlying the current appeal.
 {¶ 3} On one occasion, Robertson was getting ready for work and found appellant in her closet, hiding under her clothes; further, on more than one occasion, appellant would sneak into Robertson's house late at night and climb in bed with Robertson and their daughter; appellant also stopped at Robertson's place of employment on several occasions to tape letters to her van or otherwise speak with her; moreover, appellant would park his car on the street near her residence and wait for her to return. Robertson was bothered by appellant's conduct and asked him to stop. Despite her request, appellant continued harassing her.
 {¶ 4} On July 22, 1998, Robertson filed a motion for a protective order. The motion was granted and appellant was ordered not to have any contact with Robertson, whether by mail, e-mail, telephone, or going to her place of employment or home. After violating the order, appellant was prosecuted and convicted of menacing by stalking. While in jail, appellant did not contact Robertson. However, after his release, the contact resumed.
 {¶ 5} The most salient incident occurred on October 2, 1999. On that date, Robertson dropped their children off with appellant. Appellant subsequently called Robertson and questioned her about her boyfriend. When Robertson told appellant she was in love with her boyfriend, appellant demanded she retrieve the children. When she arrived at appellant's house, appellant was very angry. As appellant became more irritated with Robertson, he pulled her hair, picked her up, and threw her to the ground. Robertson left appellant's house and called the police. On November 30, 1999, appellant was convicted of domestic violence arising out of this altercation. Robertson sought and was granted another protective order.
 {¶ 6} Throughout January, February, and March of 2000, Robertson continued to receive odd and sometimes disconcerting letters from appellant while he was in jail. Although these letters were addressed to Dave Robertson, Robertson's brother, she received them at her residence. In March of 2000, Robertson received three more letters, two of which were sent to their daughters. Finally, in October of 2001, appellant sent two letters, written on September 18, 2001, which contained messages that Robertson characterized as threatening.
 {¶ 7} On November 30, 2001, appellant was indicted on one count of menacing by stalking, a fourth-degree felony, in violation of R.C.2903.211. This indictment was based upon an incident occurring on or about September 18, 2001. On December 7, 2001, appellant waived his right to be present at his arraignment and the trial court entered a plea of not guilty on his behalf.
 {¶ 8} On December 19, 2001, appellant was granted leave to plead not guilty by reason of insanity. Appellant ultimately withdrew this plea. On March 15, 2002, appellant was secretly indicted on two additional counts of menacing by stalking, both fourth degree felonies in violation of R.C. 2903.211, for incidents occurring between January 1, 1998 and October 18, 2001. Count one of this indictment included a designation of a prior conviction for menacing by stalking and count two included a specification of a "history of violence." The charges from both cases involved the same alleged victim, Vicky Robertson.
 {¶ 9} The cases were consolidated. At trial, counts one and two of the March 15, 2002 indictment were renumbered as counts two and three respectively with the charge from the November 30, 2001, indictment remaining as count one. Appellant entered a plea of not guilty to the two new charges on March 19, 2002.
 {¶ 10} On March 14, 2002, appellant filed a motion in limine requesting the trial court to limit discussions in the presence of the jury regarding his prior convictions as he had stipulated to his prior convictions. The trial court overruled the motion. During trial, appellant maintained a running objection to all evidence presented regarding prior acts committed from January 1, 1998 to October 19, 2001. The court overruled the continuing objection.
 {¶ 11} On March 19, 2001, appellant filed a motion to dismiss the charges for vagueness and overbreadth in violation of his right to due process and principles of double jeopardy. The motion to dismiss was denied on April 16, 2001. Appellant's request for jury instructions was also overruled. Ultimately, appellant was convicted of renumbered counts two and three and acquitted of count one. Appellant was sentenced to seventeen months in prison.
 {¶ 12} Appellant assigns seven errors for this court's review.
 {¶ 13} In his first assignment of error, appellant contends that the trial court erred to his prejudice when it allowed the state to introduce evidence of past incidents of conduct to prove the "pattern of conduct" element of his menacing by stalking charges. First, appellant contends that the use of past incidents of conduct violates principles of double jeopardy. Second, appellant argues that the past acts evidence was inadmissible pursuant to Evid.R. 403 and 404(B).
 {¶ 14} The protections of the Double Jeopardy Clauses set forth in the United States and Ohio constitutions are twofold; specifically, the Double Jeopardy Clause protects a party from prosecution for an offense after having been acquitted, convicted, or punished for that offense. Moreover, the double jeopardy clause prohibits the judicial system from imposing more than one punishment for the same offense. State v.Moissis, 11th Dist. No. 2000-L-187, 2002-Ohio-4955, ¶ 23, citing,Albernaz v. United States (1981), 450 U.S. 333, 344. However, the double jeopardy clause does not otherwise restrict the legislature's power to enact statutes defining the elements of a particular offense and the punishment to be imposed for violation of a particular offense. Moissis,
supra, at ¶ 23, citing, Brown v. Ohio (1977), 432 U.S. 161; State v.Thompkins (1996), 75 Ohio St.3d 558, 560.
 {¶ 15} In the case sub judice, the state admitted 19 letters written by appellant post marked in 1998, 4 letters postmarked in 1999, 5 letters from 2000, and two letters postmarked September 18, 2001. The letters from September 18, 2001 formed the basis for the charges in the instant case. Moreover, the state introduced underlying evidence of past domestic violence and menacing by stalking convictions to which stipulations had previously been entered. Appellant contends that because he had been criminally charged based upon the prior letters, their introduction violates the Double Jeopardy Clause. We disagree.
 {¶ 16} First of all, appellant is not being charged a second time for the same conduct for which he was previously charged, convicted, and punished. Although the past acts utilized to prove the "pattern of conduct" requirement of R.C. 2903.211 assuredly contain the same elements, the acts themselves are not being re-prosecuted. Without separate charges based upon those acts for which appellant was already convicted, we cannot conclude that appellant was subjected to successive prosecutions on those past convictions.
 {¶ 17} Moreover, the United States Supreme Court has held that cumulative punishments do not violate the Double Jeopardy Clause, provided the legislature clearly intended to permit such punishments.Moissis, supra, at ¶ 25, citing, Missouri v. Hunter (1983),459 U.S. 359. R.C. 2903.211 reads:
 {¶ 18} "(A) No person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person.
 {¶ 19} "(B) Whoever violates this section is guilty of menacing by stalking.
 {¶ 20} "(1) Except as otherwise provided in divisions (B)(2) and (3) of this section, menacing by stalking is a misdemeanor of the first degree.
 {¶ 21} "(2) Menacing by stalking is a felony of the fourth degree if any of the following applies:
 {¶ 22} "(a) The offender previously has been convicted of or pleaded guilty to a violation of this section or a violation of section2911.211 of the Revised Code.
 {¶ 23} "* * *
 {¶ 24} "(e) The offender has a history of violence toward the victim or any other person or a history of other violent acts toward the victim or any other person."
 {¶ 25} Accordingly, the language of R.C. 2903.211 clearly refers to prior convictions and their intended role in elevating the crime of menacing by stalking from a first degree misdemeanor to a fourth degree felony. Thus, appellant's claim that the use of his past convictions constituted of double jeopardy is without merit.
 {¶ 26} Next, appellant contends that the trial court's admission of the other acts evidence to prove a "pattern of conduct" violated Evid.R. 403(A) and 404(B).
 {¶ 27} Evid. R. 403(A) states that, "evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 404(B) provides:
 {¶ 28} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan knowledge, identity, or absence of mistake or accident."
 {¶ 29} The exceptions set forth in Evid.R. 404(B) have been codified in R.C. 2945.59.[2]
 {¶ 30} Evidence of a person's character is ordinarily excluded because its slight probative value as proof of conduct on a specific occasion is outweighed by the danger of unfair prejudice. However, when evidence of other acts is offered to prove something other than character, we can no longer say, categorically, that the balancing of probative and prejudicial value tilts towards exclusion. That is, such evidence is admissible, not because it shows that the defendant is crime prone, or even that he has committed an offense similar to the one in question, but in spite of such facts. State v. DeMarco (1987),31 Ohio St.3d 191, 194, citing State v. Burson (1974), 38 Ohio St.2d 157.
 {¶ 31} That said, since there is still some danger that the jury may take the evidence as bearing on character, this evidence must be treated with some care. Hence, the use of Evid.R. 404(B) and R.C. 2945.59 must be strictly construed against the state and conservatively applied. DeMarco, supra, at 194.
 {¶ 32} As discussed above, the state introduced a host of letters that were written between 1998 and 2001. The court admitted the evidence over objections from defense counsel. However, appellant argues that none of the "exceptions" delineated in either Evid.R. 404(B) or R.C. 2945.59
existed. Thus, appellant concludes the other acts evidence was inadmissible and its introduction allowed the jury to convict appellant solely on his "propensity" to commit the crime charged. We disagree.
 {¶ 33} The past evidence in question "tends to show" the existence of "scheme, plan or system." See R.C. 2945.59.
 {¶ 34} "`Scheme, plan or system' evidence is relevant * * * in those situations [where] the `other acts' form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment. In such cases, it would be virtually impossible to prove that the accused committed the crime charged without also introducing evidence of the other acts. To be admissible pursuant to this sub-category of `scheme, plan or system' evidence, the `other acts' testimony must concern events which are inextricably related to the alleged criminal act." State v. Curry (1975), 43 Ohio St.2d 66, 73.
 {¶ 35} As indicated above, R.C. 2903.211 prohibits one from "engaging in a pattern of conduct [through which one] * * * knowingly cause[s] another to believe that [one] will cause physical harm to the other person." The evidence at issue in the current matter was admissible pursuant to Evid.R. 404(B) and R.C. 2945.59 because it tends to demonstrate a scheme, plan, or system, and, as such, establishes a "pattern of conduct" required by R.C. 2903.211.
 {¶ 36} We are mindful that, despite the purpose of admission, a jury may nevertheless utilize other acts evidence for the "forbidden purpose" of inferring propensity. Anticipating this problem, the court provided a limiting jury instruction:
 {¶ 37} "Now ladies and gentlemen, evidence was presented of prior acts of the defendant except for the instruction I've just given to you as to your findings as to the history of the defendant and his relationship to the victim in this case you may use that information that you are given regarding the history and in making that determination other than that the prior bad acts may not be used to find that the defendant because he committed prior similar acts in the past that he committed the acts that he is charged for here in this case. You may take into consideration however that the prior acts may show a pattern of activity, plan, scheme or design, mode of operating or absence of mistake you may take the prior acts into consideration for those purposes."
 {¶ 38} Thus, any prejudice that appellant may have experienced from the admission of his prior acts was palliated by the jury instruction limiting the purpose of the evidence. Appellant's first assignment of error lacks merit.
 {¶ 39} In his second assignment of error, appellant contends that the trial court erred to his prejudice when it allowed the state to present testimony regarding the underlying facts of his past convictions. Appellant argues that the scope of the state's evidence should have been limited to proving the existence of the prior offense, not its details; admitting surrounding facts, appellant maintains, unduly emphasizes his prior conduct.
 {¶ 40} R.C. 2945.75(B) governs the introduction of prior convictions as an element of an offense. The statute states: "Whenever in any case it is necessary to prove a prior conviction, a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction."
 {¶ 41} It is clear that the legislature intended evidence regarding past convictions to be admissible as an element of the offenses and that the state must prove the past convictions beyond a reasonable doubt. However, as we noted in Moissis, supra:
 {¶ 42} "[i]t is not as clear how much evidence is allowed in to establish the past convictions. While submission of a certified judgment entry alone is clearly not sufficient [State v. McCoy (1993),89 Ohio App.3d 479,] testimony regarding the underlying facts related to the convictions has been deemed properly admitted provided a limiting jury instruction was issued. [State v. Rivera (1994), 99 Ohio App.3d 325, 331.]" Id., at ¶ 40.
 {¶ 43} However, even if we were to find the "surrounding facts" evidence inadmissible, the error was harmless. In order to determine whether the admission of testimony on the prior convictions is prejudicial, we must evaluate the relationship between that evidence and the totality of other evidence properly introduced by the prosecution at trial. Moissis, supra, at ¶ 46. If there is other overwhelming evidence of guilt, the admission of the testimony regarding the facts of the past convictions will be deemed harmless error. State v. Henton
(1997), 121 Ohio App.3d 501, 508.
 {¶ 44} The record reveals that the state presented sufficient evidence to prove, beyond a reasonable doubt, that appellant violated R.C. 2903.211. Specifically, the state presented evidence that appellant engaged in a pattern of conduct in which he knowingly caused the victim to believe that he would cause her physical harm or mental distress. Further, the state presented sufficient evidence to demonstrate that, notwithstanding the allegedly tainted "surrounding facts" evidence, appellant was (1) previously convicted of menacing by stalking and (2) convicted of domestic violence against the victim. As such, criteria necessary for the statutory enhancements were present notwithstanding the "surrounding facts" evidence to which appellant assigns error.
 {¶ 45} Moreover, the lower court provided the requisite limiting jury instruction to caution the jury regarding the purpose for which the past acts were admitted. Even if the evidence to which appellant assigns error were inadmissible, any error resulting therefrom was harmless. Appellant's second assignment of error lacks merit.
 {¶ 46} Under his third assignment of error, appellant contends that the trial court erred by overruling his motion to dismiss because R.C.2903.211 runs afoul of substantive due process as guaranteed by the constitution. Under this assignment, appellant makes several arguments.
 {¶ 47} First, appellant claims that the menacing by stalking statute violates principles of substantive due process when subjected to both strict scrutiny as well as rational basis review.
 {¶ 48} Generally, substantive due process applies to regulations affecting fundamental rights; strict scrutiny applies to laws which burden the exercise of fundamental rights, e.g., the right to vote, the right to travel, the various first amendment rights, and the penumbra rights to privacy, which include the right to direct the upbringing and education of one's children. Lewis v. Lewis (Jan. 31, 2001), 7th Dist. No. 99-JE-6, 2001 Ohio App. LEXIS 381, at 23, citing,Pierce v. Society ofSisters (1925), 268 U.S. 510, 534-535. In the current matter, appellant contends that the right to direct the upbringing and education of his children includes the right to correspond with them. Therefore, appellant argues that R.C. 2903.211 violates principles of substantive due process by infringing upon his fundamental rights to correspond with his children.
 {¶ 49} At the outset, we must note that all legislative enactments must be afforded a strong presumption of constitutionality. State v.Collier (1991), 62 Ohio St.3d 267, 269. That said, all statutes are subject to at least rational basis review which requires that a statutory classification be rationally related to a legitimate government purpose.State v. Thompson, 95 Ohio St.3d 264, 2002-Ohio-2124, at ¶ 26. However, when addressing the alleged violation of a fundamental right, we must examine the law with strict scrutiny. To survive strict scrutiny, a restriction must be necessary to serve a compelling government interest. Appellant alleges that R.C. 2903.211 fails both tests.
 {¶ 50} Although appellant does have a fundamental right to educate and assist in the upbringing of his children,[3] it is unclear how appellant's correspondence implicates the exercise of this right. While various letters were addressed to appellant's daughters, neither daughter was able to read at the time the letters were sent.[4] It is evident from the record that appellant's lengthy letters, replete with bizarre, sententious ramblings, were not sent to his children to educate them or assist them in their upbringing. Moreover, appellant was not prosecuted for attempting to educate or rear his children nor was he prosecuted for merely corresponding with his children. Rather, appellant was prosecuted for knowingly engaging in a patter of conduct that caused Vicky Robertson to believe that he would cause her physical harm or mental distress.
 {¶ 51} For strict scrutiny to apply a party must demonstrate that the statute in question violated a fundamental right. To the extent that appellant has failed to assert a violation of his fundamental rights to educate, rear, or otherwise correspond with his children, we need not address the constitutionality of R.C. 2903.211 under strict scrutiny review. However, appellant contends that even if strict scrutiny does not apply, R.C. 2903.211 fails rational basis review. We disagree.
 {¶ 52} Appellant states that R.C. 2903.211, "is unreasonable in that it interferes in the rights of individuals to have a say in child rearing and allows for arbitrary prosecutions." However, this claim does not demonstrate that the statute fails to have a rational basis. In fact, as we indicated above, the statute as written and applied does not implicate the right on which appellant bases his assignment of error. As such, appellant fails to demonstrate the statute is not rationally related to a legitimate state interest.[5]
 {¶ 53} Appellant further argues that the definition of mental distress set forth in R.C. 2903.211 requires a lower standard of proof than that of the corresponding civil standard for intentional infliction of emotional distress thereby violating his right to due process. Appellant's argument is misplaced. To be sure, the general assembly has defined both concepts differently; however, irrespective of the concepts' definition, the state has the burden of proving, beyond a reasonable doubt, the existence of mental distress in a criminal matter. Such a burden is significantly higher than the quantum of proof assigned to a civil plaintiff, i.e., the burden of proving, by a preponderance of the evidence, intentional infliction of emotional distress. Although the concepts are defined differently, the burden of proof in a criminal case is higher than that of a civil case. Thus, appellant has suffered no due process violation.
 {¶ 54} Next, appellant argues that R.C. 2903.211 is unconstitutionally overbroad and vague. To be unconstitutional, a statute's over breadth must be "substantial" and must appear on the face of the statute. Logan v. Russell (June 29, 2000), 4th Dist. No. 99CA7, 2000 Ohio App. LEXIS 3068, at 9, citing Akron v. Rowland (1993),67 Ohio St.3d 374. However, with respect to the argument that R.C. 2903.211
is overbroad, we note that the over breadth doctrine has no application to criminal statutes outside the first amendment. State v. Jones, 11th Dist. No. 2002-T-0084, 2003-Ohio-2920 at ¶ 14, citing, State v.Mundy (1994), 99 Ohio App.3d 275, 290. No First Amendment issue has been raised in the context of the current matter.
 {¶ 55} Moreover, in State v. Benner (1994), 96 Ohio App.3d 327, the First District Court of Appeals held that the conduct referred to by R.C. 2903.211 is not protected by the First Amendment. That is, R.C.2903.211 is not, on its face:
 {¶ 56} "`so vague and indefinite, in form and as interpreted as to permit within the scope of its language the punishment of incidents fairly within the protection of the guarantee of free speech, such that a facial challenge could be brought on the basis that the statute chills constitutionally protected conduct." Id., at 329. As such, the over breadth doctrine does not technically apply to the current matter.
 {¶ 57} However, appellant argues that the over breadth doctrine may apply where the statute regulates conduct, rather than pure speech, where the over breadth is not only real, but substantial, judged in relation to the statute's plainly legitimate sweep. Appellant contends that the "history of violence" specification is accordingly overbroad because it fails to define, in a sufficiently narrow fashion, the phrases "history of violence" and "violent acts."
 {¶ 58} Although the phrases "history of violence" and "violent acts" are not specifically defined, such phrases have an ordinary meaning that does not include benign, otherwise protected conduct such as corresponding with one's children. The conduct must be of a violent variety; such language is simple and easily understood. Therefore, the language of R.C. 2903.211 is not so broad as to sweep within its prohibitions what may not otherwise be constitutionally punished. Thus, appellant's challenge based upon R.C. 2903.211's over breadth is overruled.
 {¶ 59} Alternatively, an unconstitutionally vague statute is one which either forbids or requires the doing of an act in terms so vague that individuals of common intelligence must necessarily guess at its meaning and differ as to its application. State v. Schwab (1997),119 Ohio App.3d 463, 468. The vagueness doctrine requires a statute to give fair notice of offending conduct. State v. Dario (1995),106 Ohio App.3d 232, 236. Moreover, in order to be declared unconstitutionally vague, the statute must lack explicit standards such that it permits arbitrary and discriminatory enforcement. Id, at 237.
 {¶ 60} Appellant argues that, "the wording of the statute in question fails to inform a person of ordinary intelligence that sending letters to his children is criminal and is in fact a felony if the person has previously been convicted of Domestic Violence." [sic.] Again, appellant was not prosecuted for sending letters to his children; his children were unable to read at the time the letters were sent. As such, his former wife received and read letters, which could not be construed as an attempt to rear and educate appellant's children, and felt threatened by their content. Therefore, appellant was prosecuted for knowingly causing his wife to believe that he would cause her physical harm.
 {¶ 61} Moreover, a statute that is vague in some applications can be salvaged by a scienter requirement. Dario, supra, at 238. The level of intent required by a statute can mitigate any perceived vagueness, both facial and as applied. R.C. 2903.211 requires that the offender, "knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." "Knowingly" is one of the culpable mental states defined in R.C.2901.22(B), which states: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 62} The scienter requirement vitiates any claim that the statute's purported vagueness could mislead a person of ordinary intelligence into misunderstanding what is prohibited. Viewing the statute in its entirety, we hold that a person of ordinary intelligence would be able to discern what conduct is prohibited. The statute, criminalizes conduct only when taken with the requisite mental state.Dario, supra, at 239. Moreover, the statute sets forth sufficient guidelines for its enforcement. Therefore, R.C. 2903.211 is not void for vagueness. Appellant's third assignment of error is without merit.
 {¶ 63} In his fourth assignment of error, appellant asserts that the trial court erred when it granted the state's motion in limine seeking to exclude the testimony of Dr. Fabian, the court's psychological expert, regarding appellant's mental capacity at the time of the offense.
 {¶ 64} Generally, the denial of a motion in limine rests within the sound discretion of the trial court. In re Funk, 11th Dist. Nos. 2002-P-0035 and 2002-P-0036, 2002-Ohio-4958, at ¶ 20. As a result, this court shall not disturb the trial court's ruling unless there has been an abuse of discretion. Id. at 11. An abuse of discretion connotes more than a mere error of law or judgment; rather, it implies that the court's attitude was unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 65} Initially, appellant filed a not guilty by reason of insanity defense, but withdrew the defense prior to trial. Consequently, the lower court ruled that appellant was prohibited from presenting testimony regarding his mental capacity at the time of the offense. However, the court did permit Dr. Fabian to explain what manic and bipolar disorders are and that appellant was diagnosed with these disorders.
 {¶ 66} Appellant argues that Dr. Fabian's testimony would have aided the jury in making its determination regarding appellant's state of mind at the time of the crime. Further, appellant contends, pursuant to Evid.R. 704, that Dr. Fabian's testimony was admissible even though it addressed part of the ultimate issue; namely appellant's mental state at the time of the offense. Appellant also contends that failing to permit Dr. Fabian's testimony stripped him of his right to present a defense and thus, precluded his trial counsel from rendering effective assistance. We disagree.
 {¶ 67} In State v. Wilcox (1982), 70 Ohio St.2d 182, the Supreme Court of Ohio held that, "[a] defendant may not offer expert psychiatric testimony, unrelated to the insanity defense, to show that the defendant lacked the mental capacity to form the specific mental state required for a particular crime or degree of crime." Id. at paragraph two of the syllabus. In so holding, the court concluded that the partial defense of diminished capacity is not recognized in Ohio.
 {¶ 68} The insanity defense was relatively liberal at the timeWilcox was decided.[6] However, in 1990, the legislature codified a more conservative standard.[7] In rejecting the defense of diminished capacity, the Wilcox court stated, "[t]he diminished capacity defense does serve to ameliorate the limitations of the traditional M'Naghten,
right from wrong test for insanity." Wilcox, supra, at 187. Moreover, "[t]he ameliorative argument loses much of its force, however, in jurisdictions that have abandoned or expanded upon the narrow M'Naghten
standard." Id. at 188.
 {¶ 69} Appellant contends that because the insanity defense now resembles the M'Naghton "right from wrong" standard, the policy animating the ruling in Wilcox no longer applies. Thus, appellant contends thatWilcox does not apply to the current case and its application results in a violation of appellant's Sixth Amendment right to effective assistance of counsel. We disagree.
 {¶ 70} In State v. Cooey (1989), 46 Ohio St.3d 20, the Supreme Court of Ohio revisited the holding in Wilcox. In Cooey, the court stated that:
 {¶ 71} "[t]he Wilcox rule is based on a mistrust of the ability of psychiatry to accurately `fine-tune' degrees of capacity among offenders who are sane — i.e., who have the minimal capacity to act voluntarily. * * * To allow psychiatric testimony on specific intent would bring into Ohio law, under another guise, the diminished capacity defense we rejected in Wilcox. We therefore hold that a defendant may not offer expert psychiatric testimony unrelated to the insanity defense * * * to show that, due to mental illness, intoxication, or any other reason, he lacked the mental capacity to form the specific mental state required for a particular crime or degree of crime." Cooey, at 26.
 {¶ 72} Moreover, in State v. Wong (1994), 95 Ohio App.3d 39, the Fourth Appellate District performed a thorough survey of whether exclusion of psychiatric testimony on the issue of mens rea or specific intent violates a defendant's constitutional rights. In so doing, the court affirmed the rule enunciated in Wilcox. The court stated that all federal courts have faced the issue and:
 {¶ 73} "now unanimously hold that the exclusion of psychiatric testimony on the issue of mens rea or specific intent does not violate a criminal defendant's constitutional rights to due process or compulsory process. * * * The reasons for the[se] * * * results are twofold. First it is generally recognized that a state may validly find psychiatric testimony to be a useful tool in the determination of insanity, yet not be convinced that the sciences of psychiatry and psychology are advanced enough to `fine-tune' among sane defendants and find whether they possessed the specific intent necessary for commission of a crime. Second, while the Supreme Court of the United States has not dealt with this issue at length, there is binding precedent to support the conclusion that the Supreme Court has considered this issue, and found no valid constitutional claim." Wong, at 60 (internal citations omitted).
 {¶ 74} The assessment set forth in Wong is persuasive. Moreover, neither the legislature nor the Supreme Court of Ohio have indicated that the defense of diminished capacity is valid in Ohio. Therefore, to the extent that neither Wilcox nor Cooey have been overruled, the lower court did not abuse its discretion in granting the state's motion in limine to exclude Dr. Fabian's testimony on appellant's mental state at the time of the crime. Appellant's fourth assignment of error is without merit.
 {¶ 75} In his fifth assignment of error, appellant argues that the trial court erred when it failed to charge the jury with his proposed instructions. The Supreme Court of Ohio has held that, "it is prejudicial error in a criminal case to refuse to administer a requested charge which is pertinent to the case, states the law correctly, and is not covered by the general charge." State v. Scott (1986), 26 Ohio St.3d 92, 101. However, the Supreme Court has also held that, "the court may refuse to give an instruction as to a matter which is not applicable to the facts governing the case." Id. A trial court's failure to give a proposed jury instruction is reversible error if the defendant demonstrates that the trial court abused its discretion, and the defendant was prejudiced by the courts refusal to give the proposed instruction. Jaworowski v.Medical Radiation Consultants (1991), 71 Ohio App.3d 320, 327. "Prejudicial error occurs only if the alleged instructional flaw cripples the entire charge." Id. at 327, 328.
 {¶ 76} Appellant initially asserts that the trial court erred when it failed to give his requested jury instruction defining "pattern of conduct" and "closely related in time." Appellant offered the following instructions on the elements of "pattern of conduct" and "closely related in time:"
 {¶ 77} "Pattern of conduct
 {¶ 78} "Means two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents at least two of which happened on or after September 18, 2001.
 {¶ 79} "Closely Related in Time
 {¶ 80} "The phrase `closely related in time' means two or more actions that occurred on or after September 18, 2001." (Emphasis sic.)
 {¶ 81} The trial court denied these instructions and charged the jury as follows:
 {¶ 82} "[A] pattern of conduct means two or more actions or incidents closely related in time whether or not there has been a prior conviction based on any of these actions or incidents."
 {¶ 83} Appellant argues that his proposed jury instructions meet the criteria set forth in Scott, supra, and therefore the court's failure to charge the jury accordingly was prejudicial error.
 {¶ 84} In Moissis, supra, we addressed a similar issue. There, the appellant proposed an instruction, which read: "Pattern of Conduct means two or more actions or incidents closely related in time, at least two of which happened after the prior convictions of March 29, 2000." Similar to the current case, the appellant in Moissis maintained that his requested jury instructions were necessary because the statutory definition allowed the jury to find a pattern of conduct based solely upon his prior convictions, resulting in double jeopardy. Moissis, supra, at ¶ 18.
 {¶ 85} In rejecting the Moissis' claim we held:
 {¶ 86} "* * * the trial court instructed the jury according to the statutory definition for `pattern of conduct.' The statutory language specifically defines `pattern of conduct' as conduct that may or may not have resulted in a prior conviction. This language shows a clear intention by the legislature to include prior convictions as conduct to be considered in determining whether the offender's actions, in the aggregate, demonstrate a true `pattern of conduct.' This type of statutory construction has been found not to be in violation of state and federal double jeopardy protections. * * * Therefore, the jury instruction was in accord with the statutory definition * * * [and] appellant's assignment of error is not well taken." Id. at ¶ 97, 27-29.
 {¶ 87} Accordingly, appellant's jury instruction was not the correct statement of the law as required by Scott, supra. Moreover, as detailed in our analysis of appellant's first assignment of error and bolstered by the discussion in Moissis, the court's jury instructions do not violate the principle of double jeopardy. Consequently, the court was not constrained to utilize appellant's proposed instruction of "pattern of conduct." Furthermore, because the court's jury instruction mirrored the statutory definition of "pattern of conduct," it did not abuse its discretion by instructing the jury as it did.
 {¶ 88} Next, appellant takes issue with the court's failure to instruct the jury using his construction of the phrase "closely related in time." Like the analysis in the preceding paragraph, appellant's suggested jury instruction does not state the law correctly. The requirement that the events be closely related in time does not necessitate that one of the events occur on or after September 18, 2001. As such, appellant's requested jury charge does not meet the requirements of Scott, supra.
 {¶ 89} There is no statutory definition of the phrase "closely related in time." The Supreme Court has stated that trial courts, "should limit definitions where possible, to those definitions provided by the legislature in order to avoid unnecessary confusion and needless appellate challenges." State v. Williams (1988), 38 Ohio St.3d 346, 356, fn. 14. Thus, the lower court did not abuse its discretion by failing to instruct the jury using appellant's definition.
 {¶ 90} Appellant requested the following definition of "history of violence": "History of violence means at least two or more acts that result in physical harm to the victim on or after September 18, 2001." The court instructed the jury as follows: "You must find also that Matthew L. Werfel has a history of violence towards the victim, Vicky Robertson or any other person or a history of other violent acts towards the victim, Vicky Robertson or any other person."
 {¶ 91} Similar to the preceding analysis, appellant's instruction is not an accurate statement of the law. That is, the statute does not require that the acts which form the basis of the "history of violence" or the harm suffered from said violence occur on or after a specific date. In fact the statute simply requires the offender to have a, "history of violence toward the victim or any other person or other violent acts toward the victim or any other person." As such, appellant's jury instruction effectively modifies the statue by requiring the jury to find that the violence or the harm suffered therefrom occurred on or after a stipulated date. Such a requirement is unnecessary and the court did not err in failing to use appellant's proposed instructions.
 {¶ 92} Finally, appellant argues that the court erred by failing to give his proposed instructions as to the elements of the term "knowingly." After reviewing the content of appellant's proposed instructions regarding the term "knowingly" compared with the instructions the court utilized, we conclude that the instructions reflect the same substantive content. As such, appellant has not demonstrated that the proposed instruction included relevant details not covered by the general charge. Appellant's fifth assignment of error is overruled.
 {¶ 93} In his sixth assignment of error, appellant argues that the lower court erred by overruling his motion for acquittal pursuant to Crim.R. 29.
 {¶ 94} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259,273.
 {¶ 95} First, appellant argues that the state failed to prove that appellant engaged in a "pattern of conduct" as required by R.C. 2903.211. Appellant was indicted on three counts of menacing by stalking and convicted of counts two and three. Absent their enhancement specifications, counts two and three mirror one another and read: "On or between the 1st day of January, 1998 and the 18th day of October 2001, in Lake County, State of Ohio, one Matthew L. Werfel did, by engaging in a pattern of conduct, knowingly, cause Vicky Robertson to believe that the said Matthew L. Werfel would cause physical harm to the said Vicky Robertson or cause mental distress to Vicky Robertson."
 {¶ 96} At trial, the state introduced letters and testimony that appellant had frequent contact between the dates of January of 1998 and March of 2000. The state further introduced two letters that appellant wrote on September 18, 2001. Appellant argues that the incidents in question occurred over a long period of time and thus are not closely related in time nor do they demonstrate a pattern of conduct. We disagree.
 {¶ 97} The state presented evidence that appellant sent at least seventeen letters to Robertson's home during the month of July 1998. Moreover, testimony from the victim revealed that appellant had occasion to sneak into Robertson's home after she and her children were asleep and climb into bed with her; further, Robertson testified that, on several occasions, she would arrive at her home and appellant would be parked down the street sitting in his car. Roberson also testified that, during the period in question, appellant went to her place of employment on more than one occasion and taped letters on her vehicle. Robertson testified that she exhorted appellant to stop showing up at her home and place of employment, stop writing her letters, and to leave her alone; however, appellant's behavior did not cease.
 {¶ 98} In our view, the state presented evidence sufficient to demonstrate that appellant engaged in a pattern of conduct. Moreover, the issue of whether the acts constituting this pattern of conduct were closely related in time is a factual question for the jury. To the extent that the charging instrument detailed the relevant timeframe for the jury to consider, viz., between January 1, 1998 and October 18, 2001, and the state presented adequate evidence of continuing and repetitive activity between these dates, we cannot say that the jury's verdict was grounded upon insufficient evidence.
 {¶ 99} Next appellant argues that the state failed to present evidence that the victim was caused to believe that appellant would cause her physical harm or mental distress. Pursuant to R.C. 2903.211, the state must prove appellant engaged in a pattern of conduct wherein he knowingly caused the victim to believe he would cause her physical harm or cause mental distress. At trial, Robertson, testified that she felt physically threatened by appellant's letters. Moreover, in a July 21, 1998, statement to the police, the victim indicated that appellant's behavior made her fear for her safety. Further, in a June 11, 1998 letter, appellant noted: "I can't blame you for being scared of me." Consequently, there is sufficient evidence to demonstrate that Robertson believed appellant would cause her physical harm as a result of appellant's conduct.
 {¶ 100} Finally, appellant asserts that the state failed to prove that he had a "history of violence" necessary to enhance the charge to a fourth degree felony. We disagree. The history of violence specification was based upon appellant's November 30, 1999, conviction for domestic violence. Robertson's testimony established that appellant grabbed her by the hair, pushed her against a van, and, in the process, lifted her off the ground. Appellant ultimately threw Robertson to the ground and ripped hair from her head. Logically, this episode involved violence toward Robertson; as such, appellant has a history of violence toward the victim in this matter. Hence, there was sufficient evidence for the jury to find the "history of violence" specification. Appellant's sixth assignment of error is without merit.
 {¶ 101} In his final assignment of error, appellant argues that his convictions were against the manifest weight of the evidence. When reviewing the weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. State v. Martin (1983), 20 Ohio App.3d 172, 175. The discretionary power to grant a new trial should be exercised only in exceptional cases wherein the evidence weighs heavily against the conviction. Id.
 {¶ 102} After summary review, the evidence does not weigh so heavy against the conviction as to effect a miscarriage of justice. As such, appellant's final assignment of error lacks merit.
 {¶ 103} For the above stated reasons, appellant's assignments of error are overruled and the judgment of the Lake County Court of Common Pleas is affirmed.
Judgment affirmed.
William M. O'Neill and Diane V. Grendell, JJ., concur.
[1] During the period in question, neither of the children could read and Robertson had not been in contact with her brother for some five years.
[2] R.C. 2945.59 states: "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
[3] Moreover, we would be remiss to conclude that the right to educate and assist in the upbringing of one's children does not implicate a right to communicate and/or correspond with these children.
[4] The record reflects that appellant has two daughters: Mariah and Cortney. Although some letters were sent to Mariah, she could only read certain words and, the record indicates that she was unable to read the multi-page letters that appellant sent. Moreover, Cortney is severely handicapped. As such, she was unable to read.
[5] However, were we to perform the analysis, R.C. 2903.211 has a rational basis. On its face, the governmental interest being served by R.C. 2903.211 is protecting society from individuals who knowingly cause another person to believe that the offender will cause him or her physical harm or mental distress. Such a purpose is a legitimate exercise of the state's police power and the statute, as drafted, bears a rational relationship to this interest.
[6] The insanity defense at the time of Wilcox was as follows: One accused of criminal conduct is not responsible for such criminal conduct if, at the time of such conduct, as a result of mental disease or defect, he does not have the capacity either to know the wrongfulness of his conduct or to conform his conduct to the requirements of law. Statev. Staten (1969), 18 Ohio St.2d 13, paragraph one of the syllabus.
[7] R.C. 2901.01(A)(14) states: "A person is `not guilty by reason of insanity * * * only if the person proves * * * that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts." Moreover, R.C. 2945.391 narrows the use of the insanity defense and states, in pertinent part: "Proof that a person's reason, at the time of the commission of an offense was so impaired that the person did not have the ability to refrain from doing the person's act or acts, does not constitute a defense."