{¶ 35} I disagree with the majority's holding on appellant's initial assignment of error and therefore dissent.
 {¶ 36} A trial court is required to instruct the jury as to the applicable law on all issues presented in the case that are supported by the evidence. State v. Egolf, 11th effects of medication upon state of mind is part of common human experience which "in varying degrees, [are] susceptible to quantification or objective demonstration, and to lay understanding." Id. at 194. Dist. No. 2000-L-113, 2003-Ohio-601, at ¶ 24. It is well within the discretion of the trial court to determine whether the evidence submitted at trial was sufficient to require a particular instruction. State v. Wolons (1989), 44 Ohio St.3d 64, paragraph two of the syllabus. A trial court has properly instructed a jury when it is pertinent to the case, states the law correctly, and is not covered by the general charge. State v. Werfel, 11th Dist. Nos. 2002-L-101 and 2002-L-102, 2003-Ohio-6958, at ¶ 75. Because the trial court set forth an accurate statement of the law in relation to the evidence presented, I cannot see how it acted arbitrarily or unreasonably in charging the jury as it did.
 {¶ 37} Appellant maintains the limiting instructions were improper because they effectively commanded the jury to disregard the surrounding facts and circumstances that were relevant to the jury's determination that he acted "knowingly," thus eliminating the mens rea element required for a conviction of the crimes charged. In support of his position, appellant cites State v. Kincaid, 9th Dist. No. 01CA007947, 2002-Ohio-6116.
 {¶ 38} The majority's summary of Kincaid, while accurate, is incomplete. The Ninth District Court of Appeals, in reversing the trial court on the basis of overbroad instructions, provided guidance as to a proper instruction under the circumstances.
 {¶ 39} The court stated:
 {¶ 40} "The trial court should have specifically instructed the jury that evidence of [A]ppellant's mental state to be disregarded was his use of phencyclidine ('PCP'), possible effects of PCP on Appellant, any testimony implying that Appellant suffered from a mental defect or illness, testimony indicating that Appellant was delusional and under the influence of a drug, and testimony concerning prior psychiatric evaluations * * *. The court should have further instructed the jury that all other facts and circumstances were to be considered in light of its definition of `knowingly,' because `culpable mental states may be shown by circumstantial as well as direct evidence.' Kreuzer v. Kreuzer
(2001), 144 Ohio App.3d 610, 613." Kincaid, at ¶ 22.
 {¶ 41} In the instant matter, there was testimony that appellant possessed low intelligence and, as a result of consuming too much aspirin, his body may have been "metabolically deranged." The trial court was concerned that the jury may unwittingly use this evidence as a foundation for a conclusion that appellant suffered from diminished capacity. Following the guidance set forth in Kincaid, the trial court expressly set forth the specific evidence the jury was to disregard for purposes of determining appellant's mental state, viz., his alleged "low intelligence" and "medical condition." When read in light of the court's instruction regarding the definition of "knowingly," the jury was required to consider all the facts and circumstances in evidence with the exception of any evidence regarding his low intelligence or his medical condition. I believe the trial court properly focused the jury's attention without commanding the jury to disregard the surrounding facts and circumstances crucial to a determination of the mens rea element of the crimes in question. In my view, the trial court set forth a proper statement of the law and did not abuse its discretion.
 {¶ 42} Moreover, the trial court's decision to offer the instruction was reasonable. Appellant's purported "metabolic derangement" defense is a functional equivalent of the partial defense of diminished capacity. As noted by the majority, Ohio does not recognize the partial defense of diminished capacity. State v. Wilcox (1982), 70 Ohio St.2d 182, paragraph one of the syllabus. When a defendant does not raise the defense of not guilty by reason of insanity, that defendant may not offer expert testimony to show that "'he lacked the mental capacity to form the specific mental state required for a particular crime or degree of crime.'" State v. Cooey (1989), 46 Ohio St.3d 20, 26, citingWilcox, supra. By arguing that the jury instructions were improper, appellant is asserting the trial court erred by failing to allow the jury to consider the defense of diminished capacity. Such an assertion is clearly contrary to well settled Ohio law and must be rejected.
 {¶ 43} Further, allowing appellant's "metabolic derangement" defense to go before the jury runs contrary to the policy behind Ohio's rejection of the partial defense of diminished capacity. InWilcox, the court premised its rejection of diminished capacity upon the subtle and vague distinctions factfinders, and the judges who instruct them, would be required to draw between "'"normal" fully culpable criminal offenders, and a group of mentally abnormal but sane offenders with reduced culpability.'" Id. at 193, citing, Arenella, The Diminished Capacity Responsibility Defenses: Two Children of a Doomed Marriage, 77 Colum.LRev. 827, 860. Here, appellant's "metabolic derangement" defense is premised upon vague evidence which is speculative and loosely inferential. Appellant admitted there was no medical evidence indicating he suffered from an aspirin overdose. Further, assuming arguendo appellant took aspirin on the day in question, appellant, on a recorded phone call from jail, stated he had "threw up" the pills after ingesting them. These admissions notwithstanding, appellant contends his aggressive behavior could have been triggered by the effects of aspirin that he may have ingested because some of the symptoms he exhibitedcould be consistent with a "metabolic derangement." In order to accept appellant's argument, one must draw an inference from an inference which itself is based upon an unsupported inference.
 {¶ 44} Finally, Dr. Bligh-Glover's testimony that a "metabolic derangement" causes one's brain not to "work right" is without context and thus essentially meaningless. The failure of the brain to "work right" does not specify a neurological condition susceptible to reasonable definition. Without greater elucidation as to how a metabolic derangement of the sort identified disrupts normal brain functionand the likelihood of this occurrence given the alleged modality, I believe the testimony has no context and is highly speculative.[4]
 {¶ 45} The majority asserts the trial court's sua sponte limiting instruction infringed upon the province of the jury and thus denied appellant due process. It is the trial court's duty to accurately define the law to guide the jury's deliberations. The instruction was necessary to prevent the jury from being misled into the belief that appellant's speculative "metabolic derangement" was relevant to appellant's state of mind at the time of the committed offenses. In my view, the alleged condition had no relevance to whether appellant knowingly committed the crimes in question. Therefore, the trial court acted reasonably in providing the jury with the cautionary instruction.
 {¶ 46} Accordingly, I would hold the trial court properly instructed the jury not to consider appellant's would-be diminished capacity defense. Contrary to appellant's argument, I do not believe the trial court unconstitutionally made the crimes with which appellant was charged strict liability offenses nor do I believe due process was offended by its intercession of the limiting instruction. For these reasons, I would overrule appellant's first assignment of error.
[4] While Dr. Bligh-Glover was qualified to testify on the potential physical effects of an aspirin overdose, it is less clear he was qualified to opine, with a reasonable degree of medical certainty, as to the mental or psychological effects of an aspirin overdose.