DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Michael A. Crowe, appeals from his conviction in the Medina Court of Common Pleas. This Court affirms.
 I. {¶ 2} Appellant operates a business named North Coast Gutter ("NCG") out of his home in Wadsworth, Ohio. NCG is located four houses up the street from Davis Painting which is owned and operated by Matthew Davis ("Mr. Davis"). Prior to January 2002, Appellant and Mr. Davis' family had no problems with one another. The relationship between these families changed in January 2002 after Appellant began dating Demetria Davis, John Davis' wife and Matthew Davis' sister-in-law. John Davis and his wife were separated at this time and have since divorced.
 {¶ 3} The relationship between Appellant and Demetria Davis created friction between Appellant and Mr. Davis. This case arises out of several incidents that occurred between September 2002 and July 2004 wherein Appellant threatened Mr. Davis and his family. These incidents routinely involved Appellant shouting obscenities and threats at Mr. Davis. One incident involved a physical altercation between Appellant and Mr. Davis. Mr. Davis often reported Appellant's actions to the Wadsworth Police Department. On July 8, 2004, a Wadsworth police officer pulled Appellant over after Mr. Davis filed a report alleging that he had threatened him with a knife at the Marathon gas station. After viewing a surveillance video from the gas station, Officer Sean Shannon drew up charges and later arrested Appellant.
 {¶ 4} On July 22, 2004, Appellant was indicted by a Medina County grand jury for one count of menacing by stalking in violation of R.C. 2903.211(A)(1)/(B)(2)(e), a felony of the fourth degree. The indictment was later amended on October 21, 2004 to include menacing incidents that occurred as early as September 2002. In May 2005, the case proceeded to trial in front of a jury. At the close of the State's evidence and again at the close of all evidence, Appellant made a Crim.R. 29 motion for acquittal. The court denied both motions. The jury returned a guilty verdict. Appellant timely filed an appeal from the jury's verdict, raising three assignments of error for our review.
 II. ASSIGNMENT OF ERROR I
"THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE JURY'S GUILTY VERDICT, AND APPELLANT'S MENACING BY STALKING CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 5} In his first assignment of error, Appellant argues that insufficient evidence was produced to support the jury's verdict and that his conviction was against the manifest weight of the evidence. This Court disagrees.
 {¶ 6} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id.
 {¶ 7} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v.Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citingState v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). Further,
"[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.)
State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2. Therefore, we will address Appellant's claim that his conviction was against the manifest weight of the evidence first, as it is dispositive of his claim of insufficiency.
 {¶ 8} When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 9} Appellant was convicted of one count of menacing by stalking in violation of R.C. 2903.211(A)(1)/(B)(2)(e), a felony of the fourth degree. R.C. 2903.211 provides, in pertinent part:
"(A)(1) No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person.
"* * *
"(B) Whoever violates this section is guilty of menacing by stalking.
"* * *
"(2) Menacing by stalking is a felony of the fourth degree if any of the following applies:
"* * *
"(e) The offender has a history of violence toward the victim or any other person or a history of other violent acts toward the victim or any other person."
 {¶ 10} Appellant argues that the State failed to establish (1) a pattern of conduct and (2) that he knowingly caused Mr. Davis to believe that he would cause him physical harm or mental distress.
Pattern of Conduct
 {¶ 11} For purposes of the menacing by stalking statutes, `pattern of conduct' is defined as "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." R.C. 2903.211(D)(1).
 {¶ 12} The State presented several witnesses at trial. Mr. Davis testified as follows. In January 2002, he and his mother ran into Appellant at the Wadsworth police station where they were attempting to post bail for John Davis, Mr. Davis' brother.[1] While Mr. Davis and his mother were filling out paperwork, Appellant came in and verbally assaulted them. Appellant later left the building and waited by Mr. Davis' truck until he came outside. When Mr. Davis came outside, Appellant threatened him.
 {¶ 13} On October 29, 2002, Appellant encountered Mr. Davis at the Stop-N-Go convenience store located near both of their businesses. While Mr. Davis stood at the cash register, Appellant entered the store and shouted an obscenity at him. Appellant then grabbed Mr. Davis by the throat and caused him to knock over a display stand. Appellant threatened to put a bullet into the heads of Mr. Davis and his brother, John. Maranda Nixon, one of the store clerks, instructed Appellant to leave the store and followed him out. When she returned to the store, she assured Mr. Davis that it was safe for him to exit the store. Mr. Davis then walked to his car. When Mr. Davis got into his car, Appellant stood outside Mr. Davis' vehicle, shouting verbal threats at him. Once he returned to work, Mr. Davis had his brother photograph the marks on his neck left by Appellant's assault. He later filed a police report regarding the incident.
 {¶ 14} Ms. Nixon also testified regarding the October 29, 2002 events. She testified that she did not see Appellant knock Mr. Davis into a display rack but only heard the display rack fall over. She then asked Appellant to leave the store and walked him outside. She filed a police report regarding the incident later that day. The entire incident was captured on the store security camera and the State played the tape for the jury.
 {¶ 15} Officer Frank Kaiser of the Wadsworth Police Department testified regarding his investigation into the October 29, 2002 incident. He testified that, on October 29, 2002, he was dispatched to Mr. Davis' business to investigate an incident between him and Appellant that took place at the Stop-N-Go. Officer Kaiser viewed the tape from the security camera. His testimony corroborated the testimony from Mr. Davis and Ms. Nixon that Appellant entered the store at the time Mr. Davis approached the counter and then grabbed Mr. Davis by the neck. He testified that after Appellant grabbed Mr. Davis by the neck, he pushed him out of the camera's range. He additionally testified that he did not see Mr. Davis strike Appellant.
 {¶ 16} Mr. Davis testified that, in the weeks and months following the October 29, 2002 incident, Appellant often drove past his business in his company truck and shouted obscenities or threats at him. Mr. Davis also testified that he reported some of these events to the police but did not report all of these incidents because he did not want to become a nuisance to the police.
 {¶ 17} On August 7, 2003, Mr. Davis went to the Wadsworth post office to deposit his mail. Mr. Davis encountered Appellant in the parking lot. Appellant was driving a red corvette and shouted threats at Mr. Davis from across the post office parking lot, stating that he was "going to kick my a**." According to Mr. Davis, Appellant continued to make these types of threats for about eight minutes. Mr. Davis eventually left his vehicle to enter the post office. After leaving the post office, Mr. Davis noticed a red corvette driving behind him and gaining ground. The driver was repeatedly speeding up and slowing down. Eventually, the car was close enough that Mr. Davis could see that Appellant was driving the vehicle. Mr. Davis reported this incident to the police.
 {¶ 18} On August 25, 2003, Wadsworth Police Detective Boyd went to Mr. Davis' business in response to a complaint Mr. Davis made regarding Appellant. Mr. Davis testified that, shortly after his arrival, Appellant drove by in his company truck shouting, "f * * * you, faggot." Officer Boyd testified that he observed Appellant's NCG van drive by the store and heard someone yell something but could not hear what was said. He was also unable to see the driver of the van.
 {¶ 19} Mr. Davis testified that two days later, on August 27, 2003, Appellant again drove by his business and screamed insults and threats. Officer Boyd was also at Mr. Davis' business on this occasion. Officer Boyd brought a recorder with him and placed it on Mr. Davis' truck. Officer Boyd again observed Appellant's vehicle drive by and heard someone shout something. Officer Boyd was unable to decipher what was said at the time but obtained an audio recording of the incident. Officer Boyd testified that he listened to the audio tape and heard someone yell "hey, faggot boy." He then testified that he heard a voice that was not Appellant, respond "what's up?"
 {¶ 20} As a result of the August 25 and 27, 2003 incidents, Officer Boyd and Sgt. Reinke went to Appellant's home to interview him. The officers specifically asked Appellant about the August 2003 incidents. Appellant initially denied the allegations that he drove by Mr. Davis' business and shouted obscenities and threats but later changed his story, stating that if Mr. Davis is a faggot, he probably called him that and will continue to call him that. Appellant also told the officers that the Davis family was harassing him but that he had not reported their conduct to the police.
 {¶ 21} Mr. Davis testified that on August 30, 2003, he was driving to Sherwin-Williams to purchase some materials when he again encountered Appellant. Appellant followed Mr. Davis to the store and once he got out of his vehicle, Appellant pulled out his knife and made a threatening gesture with the knife.
 {¶ 22} On July 8, 2004, Mr. Davis encountered Appellant at the Marathon gas station in Wadsworth. After purchasing items in the gas station, Mr. Davis returned to his car. While exiting the gas station, Appellant cut him off. Appellant then pointed his finger at Mr. Davis and threatened to hurt Mr. Davis and his family. Appellant also made a gesture in which he dragged his finger across his throat with his knife. Once he left the gas station, Mr. Davis called the police. At trial, the State played a surveillance tape from the gas station's security camera which showed Appellant arriving at the gas station, approaching Mr. Davis, pointing his finger at Mr. Davis and then returning to his vehicle.
 {¶ 23} Officer Shannon also testified on behalf of the State. Officer Shannon testified that Mr. Davis came to the Wadsworth Police Station shortly after the incident at the Marathon station to file a complaint against Appellant. While Officer Shannon was interviewing Mr. Davis, Mr. Davis alerted him that he observed Appellant driving by the police station. Officer Shannon immediately called dispatch who sent Sgt. Dorland to stop Appellant. Sgt. Dorland effectuated the stop. Officer Shannon then traveled to the site where Sgt. Dorland was detaining Appellant. Appellant admitted that he had been at the Marathon station earlier that day and had seen Mr. Davis. Appellant told Officer Shannon that he had shown Mr. Davis the middle finger and said "f * * * you." Officer Shannon testified that Appellant said that every time he saw Mr. Davis he would repeat the latter statement and gesture. According to Officer Shannon, Appellant told him that he did not get out of his vehicle at the Marathon station during the confrontation with Mr. Davis. The surveillance tape showed Appellant exiting his vehicle during the confrontation. When asked whether he was carrying a knife, Appellant told Officer Shannon that everyone knows that he carries a knife. Officer Shannon obtained the knife when he arrested Appellant later that day.
 {¶ 24} Appellant testified as follows. He went to the Wadsworth Police Station on January 18, 2002 to file a report against John Davis. He ran into Mr. Davis and Mr. Davis' mother while at the police station. Mr. Davis asked him not to file a complaint against his brother because his brother was very depressed. Appellant agreed not to file the complaint on the condition that John Davis refrain from entering his property.
 {¶ 25} With regard to the October 29, 2002 altercation at the Stop-N-Go, Appellant testified that upon entering the store, he tripped and fell into Mr. Davis, knocking him into a doughnut rack. He then accidentally grabbed Mr. Davis as they were falling because he was trying to protect himself. Appellant acknowledged that, as a result of the Stop-N-Go incident, he was charged with assault, disorderly conduct and aggravated menacing. He testified that the assault and menacing charges were dismissed and that he pled no contest to the disorderly conduct charge. According to Appellant, he had no other altercations with Mr. Davis until the July 2004 incident. However, when asked about the August 27, 2003 incident, he acknowledged that the voice on the audio-recording was his and admitted saying "hey, faggot boy" but could not recall to whom this statement was directed. Appellant only recalled that the statement was directed to an acquaintance other than Appellant who was outside on the sidewalk or street. Appellant testified that he had never threatened Mr. Davis or anyone in the Davis family.
 {¶ 26} Appellant was also questioned about the July 8, 2004 incident. In contrast to his conversation with Officer Shannon on July 8, 2004, at trial Appellant testified that when he arrived at the gas station, he saw Mr. Davis who was making offensive gestures at him. He then got out of his vehicle and asked Mr. Davis "what his f***ing problem was." Appellant contends that he and Mr. Davis proceeded to exchange curse words and threats. Appellant denied making any threatening gestures at Mr. Davis but acknowledged that he regularly carries a knife as he often uses it at work to open boxes of materials.
 {¶ 27} Through the testimony of Mr. Davis and Wadsworth police officers, the State set forth evidence that Appellant's actions constituted a pattern of conduct. More specifically, the State demonstrated that Appellant engaged in this conduct in January 2002, October 2002, July 2004 and four times in August 2003. We are particularly mindful of evidence that several of these incidents were closely related in time as the State demonstrated that two or more incidents occurred on each of the following days: October 29, 2002, August 7 and August 30, 2003, and July 8, 2004. "[T]he issue of whether the acts constituting this pattern of conduct were closely related in time is a factual question for the jury." State v. Werfel, 11th Dist. Nos. 2002-L-101, 2002-L-102, 2003-Ohio-6958, at ¶ 98. As R.C.2903.211(D) only requires two incidents which are closely related in time to support a conviction, we find that the State has more than satisfied this burden.
Knowingly Caused a Belief of Physical Harm
 {¶ 28} The State presented ample evidence to establish that, on more than two occasions, Appellant knowingly caused Mr. Davis to believe that he would cause physical harm to him or his family. Mr. Davis testified that on October 29, 2002, Appellant threatened to shoot him and his brother. He further testified that on October 29, 2002, Appellant grabbed him around the neck. Then, on August 7, 2003, Mr. Davis testified that Appellant threatened to beat him up. Mr. Davis additionally testified that, on July 8, 2004, Appellant threatened to harm him and his family and made a threatening gesture with his pocket knife. Mr. Davis testified that, as a result of these incidents, he fears for his own and his family's safety. This fear has prompted him to install a security system in his home and to obtain a permit to carry a concealed weapon.
 {¶ 29} In contrast, Appellant denied ever threatening Mr. Davis or his family. Although he admits that he has shouted obscenities at Mr. Davis, he contends that he only did so in response to Mr. Davis' actions.
 {¶ 30} We will not disturb the trial court's determinations regarding the witnesses' credibility as "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. The trier of fact is in the best position to judge the credibility of the witnesses and found that Appellant committed the charged offenses.
 {¶ 31} After a review of the evidence, we cannot say that the jury lost its way and created a miscarriage of justice when it convicted Appellant of menacing by stalking. The statute requires a belief on the part of the alleged victim that the accused will cause physical harm or mental distress to him or her. See R.C.2903.211. Explicit threats are not necessary, but the State must prove that the defendant knowingly caused the belief in the victim. See State v. Smith (1998), 126 Ohio App.3d 193, 200. Given the testimony, this is not a case where the evidence weighs heavily in favor of Appellant, meriting a new trial. Accordingly, Appellant's conviction for menacing by stalking was not against the manifest weight of the evidence.
 {¶ 32} As this Court has disposed of Appellant's challenge to the weight of the evidence, we similarly dispose of his challenge to its sufficiency. Roberts, supra, at *2. Accordingly, Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"THE TRIAL COURT ABUSE[D] ITS DISCRETION AND ERRED TO THE PREJUDICE OF APPELLANT BY ADMITTING EVIDENCE AND ALLOWING THE PROSECUTOR TO QUESTION WITNESSES CONCERNING: (1) AN ALLEGED JANUARY 18, 2002 INCIDENT WHICH PRE-DATED THE TIME PERIOD SET FORTH IN THE INDICTMENT; (2) TWO ALLEGED AUGUST, 2003 INCIDENTS WHICH WERE NOT LISTED IN THE STATE'S BILL OF PARTICULARS OR NOTICE OF INTENT, AND DISCOVERABLE EVIDENCE OF WHICH WAS NOT PROVIDED TO DEFENSE COUNSEL PRIOR TO TRIAL; AND (3) ALLEGED THREATS BY [APPELLANT] AGAINST THIRD PARTIES."
 {¶ 33} In his second assignment of error, Appellant contends that the trial court abused its discretion by allowing evidence regarding (1) an incident that allegedly predated the time period set forth in the indictment, (2) two incidents that were not listed in the State's bill of particulars and (3) alleged threats by Appellant against third parties. We disagree.
 {¶ 34} It is well established in Ohio that "`[t]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court.'" (Alterations sic) State v.Robb (2000), 88 Ohio St.3d 59, 68, quoting State v. Sage
(1987), 31 Ohio St.3d 173, paragraph two of the syllabus. See also State v. Yeager, 9th Dist. No. 21510, 2005-Ohio-4932, at ¶ 15. An appellate court will not disturb a trial court's ruling as to the admissibility of evidence absent an abuse of discretion and a showing of material prejudice by the opposing party.Yeager, at ¶ 15, citing State v. Martin (1985),19 Ohio St.3d 122, 129.
 {¶ 35} In the amended indictment, the State informed Appellant that the time period at issue was from September 1, 2002 to the present time. Consequently, Appellant correctly asserts that the January 2002 event predates the time period set forth in the indictment. However, if there is no reasonable possibility that improperly admitted evidence contributed to Appellant's conviction, then the admission constitutes harmless error. State v. Elliott (1993), 91 Ohio App.3d 763, 771, citingState v. Lytle (1976), 48 Ohio St.2d 391. As the State set forth abundant evidence regarding multiple incidents between Mr. Davis and Appellant, including evidence from two security cameras, we find that the admission of evidence regarding an event that transpired several months before this time period was harmless error.
 {¶ 36} We similarly find no merit in Appellant's argument that the trial court's admission of evidence regarding the August 25 and 27, 2003 incidents was an abuse of discretion. Although these dates were not included in the Notice of State's Intent to Use Incidences of Defendant's conduct, the August 2003 incidents clearly fall within the time period alleged in the amended bill of particulars which spans from September 1, 2002 to the time of trial (May 2005). Appellant was clearly aware that Mr. Davis had apprised the police about these events as Officer Boyd testified that he went to Appellant's residence on September 2, 2003 and specifically questioned him about the August 25, and 27, 2003 incidents. Furthermore, Appellant has failed to demonstrate that the State had an obligation to supply Appellant with a notice of its use of incidences of Appellant's conduct. As Appellant was clearly aware that the State was relying on evidence from throughout that time period, we find no abuse of discretion in the admission of this evidence. See State v. Shue, 8th Dist. No. 84007, 2004-Ohio-5021, at ¶ 17.
 {¶ 37} Assuming, arguendo, that the admission of this evidence was error, we find such error to be harmless. R.C.2903.211(D) only requires two incidents which are closely related in time to support a conviction. In light of the evidence presented regarding the October 29, 2002, August 7 and 30, 2003, and July 8, 2004 events, we find that the State has more than satisfied this burden.
 {¶ 38} Lastly, Appellant contends that the trial court erred in allowing evidence regarding prior alleged threats he made to third parties. However, the State only questioned Appellant regarding these incidents on cross-examination to refute Appellant's contention that he had never threatened anyone. Evid.R. 608(B) gives the court discretion to allow cross-examination of a witness for impeachment purposes regarding specific instances of conduct if clearly probative of the witness' veracity. Evid.R. 608(B) states, in pertinent part:
"Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness * * * may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness[.]"
Additionally, Evid.R. 611(B) provides: "[c]ross-examination shall be permitted on all relevant matters and matters affecting credibility." Under Evid.R. 608(B), the State was permitted to question Appellant about these specific instances of conduct to demonstrate his character for untruthfulness. State v. Cureton,
9th Dist. No. 01CA3219-M, 2002-Ohio-5547, at ¶ 35. Therefore, we find no abuse of discretion in the admission of evidence regarding alleged threats he made to third parties. Appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III
"THE USE OF THE OCTOBER 29, 2002 INCIDENT AT THE STOP-N-GO CONVENIENCE STORE TO ESTABLISH AN ALLEGED PATTERN OF CONDUCT IN THIS MENACING BY STALKING CASE VIOLATED THE DOUBLE JEOPARDY CLAUSES OF THE UNITED STATES AND OHIO CONSTITUTIONS, WHERE [APPELLANT] WAS PREVIOUSLY CONVICTED OF A DISORDERLY CONDUCT OFFENSE IN MUNICIPAL COURT AND FINED AS A RESULT OF THAT INCIDENT."
 {¶ 39} In his third assignment of error, Appellant contends that the State's use of evidence and testimony regarding the October 29, 2002 incident at the Stop-N-Go to establish an alleged pattern of conduct by Appellant violated the Double Jeopardy prohibition of the Fifth and Fourteenth Amendments to the Constitution and Article I, Section 10 of the Ohio Constitution. We find no merit in this contention.
 {¶ 40} A review of the record reveals that Appellant did not object to evidence regarding the October 29, 2002 incident at trial on the basis of a constitutional violation. Rather, Appellant objected on procedural grounds. See Evid.R. 103(A)(1);State v. Murphy (2001), 91 Ohio St.3d 516, 532; State v.Houston, 10th Dist. No. 04AP-875, 2005-Ohio-4249, at ¶ 20. As such, Appellant has waived his constitutional argument unless plain error exists. See State v. Barnes (2002),94 Ohio St.3d 21, 27; State v. Allen (1995), 73 Ohio St.3d 626, 634; Crim.R. 52(B). As Appellant has not alleged plain error, we need not address it. Appellant's third assignment of error is overruled.
 III. {¶ 41} Appellant's three assignments of error are overruled, and the judgment of the Medina County Common Pleas Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Carr, P.J. Boyle, J. concur.
[1] Mr. Davis testified that his brother was in jail as a result of an incident involving a restraining order his wife had obtained against him.