[Cite as *Chattree v. Chattree*, 2014-Ohio-489.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 99337

---

## MANORAMA CHATTREE

PLAINTIFF-APPELLEE and
CROSS-APPELLANT

vs.

## ARUN K. CHATTREE

DEFENDANT-APPELLANT and
CROSS-APPELLEE

---

## JUDGMENT:
## AFFIRMED IN PART, REVERSED IN PART,
## AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. D-321775

**BEFORE:** Celebrezze, P.J., Jones, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** February 13, 2014

**ATTORNEY FOR APPELLANT/CROSS-APPELLEE**

Carl A. Murway
Taft Stettinius & Hollister, L.L.P.
200 Public Square, Suite 3500
Cleveland, Ohio   44114


**ATTORNEY FOR APPELLEE/CROSS-APPELLANT**

Jonathan A. Rich
Victoria A. Glowacki
Zashin & Rich Co., L.P.A.
55 Public Square, 4th Floor
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEES**

**For Canada Life**

Suzanne M. Jambe
Baker & Hostetler, L.L.P.
3200 PNC Center
1900 East Ninth Street
Cleveland, Ohio   44114

**For Ritu R. Chattree**

Ritu R. Chattree, pro se
61 Jane Street
Apartment 14-B
New York, New York   10014

**For Libman Ryder & Co., Inc., et al.**

Walter F. Ehrnfelt
Waldheger-Coyne
1991 Crocker Road, Suite 550
Westlake, Ohio   44145

FRANK D. CELEBREZZE, JR., P.J.:

{¶1} Defendant-appellant, Arun Chattree ("Arun"), appeals from a judgment entry of divorce that awarded temporary and permanent spousal support and attorney fees and divided marital assets. Plaintiff-appellee, Monorama Chattree ("Mona"), cross-appeals from the judgment entry of divorce and challenges the valuation of Arun's business, the division of marital assets, and the court's order allowing Arun to maintain possession of his passport. For the following reasons, we affirm in part, reverse in part, and remand to the trial court for further proceedings consistent with this opinion.

## Factual and Procedural History

{¶2} Arun, now 79 years old, and Mona, now 78 years old, were married in India on November 14, 1961. In 1963, their only child, a daughter, Ritu Chattree, was born. Shortly after Ritu's birth, Arun went to the United States to further his education. Approximately four years later, Mona and Ritu joined Arun in the United States. Mona maintained employment as a bacteriologist until she retired in 1995. Arun worked at various companies until 1995 when he started his own business called Community Behavioral Health Center, Inc. ("CBHC"). CBHC is licensed by the state of Ohio to provide mental health services to patients through various providers and agencies.

{¶3} After 48 years of marriage, Mona and Arun became estranged. On June 19, 2008, Mona filed her complaint for divorce, naming seven defendants, seeking a divorce from Arun and restraining orders against Arun and the other defendants. On December 9, 2008, Mona filed an amended complaint for divorce and named only four defendants,

Arun and three business entities in which he had an interest. After numerous pretrial hearings and an interloculatory appeal, the matter proceeded to trial, beginning March 8, 2010. Trial occurred on 27 separate days, over a span of seven months, before concluding on October 4, 2010.

{¶4} At the conclusion of trial, written closing arguments were filed by Mona on November 4, 2010, and by Arun on December 16, 2010. On April 3, 2012, the magistrate issued a decision, making findings of fact and conclusions of law. On November 30, 2012, the trial court ruled on the parties' objections, adopting in part and modifying in part the magistrate's decision.

{¶5} Arun now brings this timely appeal, raising eight assignments of error for review. In her cross-appeal, Mona raises six cross-assignments of error for review.[1]

## Law and Analysis

## Arun's Appeal

## I. Standard of Review

{¶6} For the purpose of judicial clarity, we consider Arun's assignments of error out of order. We review a trial court's determination in domestic relations cases under an abuse of discretion standard. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).

> Since it is axiomatic that a trial court must have discretion to do what is equitable upon the facts and circumstances of each case, * * * it

---

[1] Appellant's assignments of error and appellee's cross-assignments of error are included in the appendix to this opinion.

necessarily follows that a trial court's decision in domestic relations matters should not be disturbed on appeal unless the decision involves more than an error of judgment.

*Id.*, citing *Cherry v. Cherry*, 66 Ohio St.2d 348, 355, 421 N.E.2d 1293 (1981). This same standard applies to orders relating to spousal support and the division of marital property. *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 218, 450 N.E.2d 1140 (1983), and *Martin v. Martin*, 18 Ohio St.3d 292, 294, 480 N.E.2d 1112 (1985). An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore* at 219.

## II. Division of Marital Property

**{¶7}** In a divorce proceeding, marital property includes the following:

(i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

(iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage * * *.

R.C. 3105.171(A)(3)(a)(i)-(iii).

**{¶8}** R.C. 3105.171(C)(1) mandates an equal division of marital property, or, "if an equal division is inequitable, the court must divide the marital property equitably." *Strauss v. Strauss*, 8th Dist. Cuyahoga No. 95377, 2011-Ohio-3831, ¶ 37, citing *Neville v.*

*Neville*, 99 Ohio St.3d 275, 277, 2003-Ohio-3624, 791 N.E.2d 434. In order to determine what is equitable, the trial court must consider the factors outlined in R.C. 3105.171(F). *Id.* Such factors include, among others, the duration of the marriage, the assets and liabilities of the spouses, tax consequences of the property division, and any retirement benefits of the spouses. R.C. 3105.171(F)(1)-(10). Moreover, the trial court must take into account the parties' marital debt when dividing marital property. *Kehoe v. Kehoe*, 2012-Ohio-3357, 974 N.E.2d 1229, ¶ 14 (8th Dist.).

{¶9} Marital property, however, does not include separate property. R.C. 3105.171(A)(3)(b). "Separate property" is any real and personal property and any interest in real or personal property that was acquired by one spouse prior to the date of the marriage. R.C. 3105.171(A)(6)(a)(ii). The commingling of separate property with other property does not destroy the identity of the separate property "except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). The party seeking to have certain property classified as "separate property" has the burden of proof in tracing the separate property. *Strauss* at ¶ 49, citing *Peck v. Peck*, 96 Ohio App.3d 731, 734, 645 N.E.2d 1300 (12th Dist.1994).

{¶10} The marital assets in this case consist of both personal and real property. However, within his appeal, Arun limits his arguments to the trial court's division of the following: (1) his interest in a cooperative apartment in New York, New York; (2) the common pleas judgment award in the amount of $254,399.09; (3) the parties' retirement benefits; and (4) his interest in CBHC.

## A. The Cooperative Apartment

**{¶11}** During the pendency of the parties' marriage, Arun gifted his daughter Ritu a sum in excess of $550,000 for the purchase and renovation of a cooperative apartment located at 61 Jane Street, New York, New York. Ritu subsequently asked for additional money to cover the costs of renovations needed for the apartment that exceeded her original budget. Arun agreed to loan Ritu the money provided that she first execute a promissory cognovit note for the full amount of the loan, which was $187,000, plus interest. In 2009, Ritu and her father had a "falling out," and Arun sued his daughter in federal court regarding the purchase and renovation of the cooperative apartment and in Ohio state court over his unsatisfied demand that she pay the cognovit note in full.

**{¶12}** Arun prevailed, to some extent, in both lawsuits. On February 9, 2010, in *Chattree v. Chattree*, N.D. Ohio No. 1:08 CV 2039, 2010 U.S. Dist. LEXIS 45885 (May 11, 2010), the U.S. District Court issued a decision in favor of Arun on his causes of action for breach of fiduciary duty, fraudulent misrepresentation, concealment, and breach of contract. Zero dollars were awarded to Arun, however, Ritu was ordered to effectuate a transfer of title so that it named her and Arun as "tenants-in-common of the premises know as Cooperative Apartment 14B on 61 Jane Street, New York, New York."

**{¶13}** On March 31, 2010, in *Chattree v. Chattree*, Cuyahoga C.P. No. CV-09-696460 (Mar. 31, 2010), the common pleas court issued a judgment against Ritu in favor of Arun in the amount of $254,399.09 on the cognovit note that she signed for

$187,000. This court affirmed the judgment of the trial court in *Chattree v. Chattree*, 8th Dist. Cuyahoga, No. 95051, 2011-Ohio-1995.

{¶14} In dividing the parties' marital property, the magistrate held that Arun and Mona had no separate property. With respect to the cooperative apartment, the magistrate determined that Ritu was entitled to "one-half of any equity Arun receives from the Jane Street property" because its purchase and renovation derived from the parties' joint bank accounts during the pendency of their marriage. Further, the court found that the common pleas court's award of $254,399.09 for payment of the cognovit note was marital property. However, in dividing the property, the court awarded Mona the full $254,399.09, but reduced Arun's outstanding spousal support arrearage by $127,199.50, representing one-half of the cognovit judgment.

## 1. The Federal Court Judgment

{¶15} In his second assignment of error, Arun argues that the trial court erred in its division of property by not finding that his interest in the cooperative apartment, as ordered by the federal court, constituted his separate property. As stated, property acquired during a marriage is presumed to be marital property unless it can be shown to be separate. *Huelskamp v. Huelskamp*, 185 Ohio App.3d 611, 2009-Ohio-6864, 925 N.E.2d 167, ¶ 13 (3d Dist.).

{¶16} Arun does not dispute that the cooperative apartment was purchased during the parties' marriage with marital funds. Instead, he contends that this court should find that the interest awarded to him by the federal court is his "separate property" because he

suffered damages in an individual capacity. Arun's argument relies on R.C. 3105.171(A)(6)(a)(vi), which defines separate property as all real property and personal property that is found by the court to be "compensation to a spouse for the spouse's personal injury * * *." Generally, R.C. 3105.171(A)(6)(a)(vi) applies to situations where, unlike here, a party is awarded monetary damages following a personal-injury lawsuit. Nevertheless, Arun contends that the damages he suffered as a result of Ritu's conduct "are akin to personal injuries" contemplated under R.C. 3105.171(A)(6)(vi). Arun's contention is without merit.

{¶17} In our view, the language used in R.C. 3105.171(A)(6)(vi) does not encompass an individual who suffers a legal injury in an individual capacity. Moreover, even if it did, Arun did not suffer an injury in an individual capacity. R.C. 3105.171(A)(6)(a)(ii) defines marital property as any interest in real or personal property that was acquired by either or both spouses during the marriage. Here, Arun's interest in the cooperative apartment was obtained with funds transferred from the parties' marital accounts during their marriage. Consequently, Mona had an interest in the funds used to purchase and renovate the cooperative apartment.

{¶18} Next, Arun argues that this court should find that Mona's actions during the entirety of the federal lawsuit constituted "financial misconduct." R.C. 3105.171(E)(3) provides that if a spouse has engaged in financial misconduct, including but not limited to the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of

marital property. "Financial misconduct implies some type of wrongdoing which results in the offending spouse either profiting from the misconduct or intentionally defeating the other spouse's distribution of marital assets." *Carpenter v. Carpenter*, 7th Dist. Noble No. 06-NO-331, 2007-Ohio-1238, ¶ 15, citing *Wideman v. Wideman*, 6th Dist. Wood No. WD-02-030, 2003-Ohio-1858, ¶ 34.

{¶19} Here, Arun contends that because Mona actively participated in the federal lawsuit and testified on behalf of Ritu, her conduct was the equivalent of dissipating marital assets. We find no merit to Arun's argument. In our view, the mere fact that Mona disagreed with Arun suing their daughter in federal court does not equate to a finding that Mona committed financial misconduct. Mona committed no wrongdoing in testifying truthfully at trial.

{¶20} Finally, Arun contends that the trial court failed to consider the $843,750 mortgage encumbering the cooperative apartment when it awarded Mona an interest in the apartment as a marital asset. However, the trial court's judgment order specifically requires Ritu to make all payments on the loan and hold Arun harmless on any debt associated with the property. Thus, it is clear that the trial court did not ignore the mortgage encumbering the apartment and any future liability associated with said mortgage.

{¶21} Based on the foregoing, we find that the trial court did not err in concluding that Arun's interest in the cooperative apartment was marital.

{¶22} Arun's second assignment of error is overruled.

## 2. The Common Pleas Court Judgment

**{¶23}** In his sixth assignment of error, Arun argues that the trial court erred by concluding that the cognovit judgment against Ritu was marital property. However, as discussed above, the funds loaned to Ritu derived from marital accounts. Accordingly, the trial court properly determined that the cognovit judgment in the amount of $254,399.09 was a marital asset.

**{¶24}** Arun further argues, without support in the record, that because the trial court's arrearage calculation was inequitable and unlawful, the provision in the trial court's order requiring Arun to transfer his interest in the cognovit judgment to Mona to reduce the arrearage amount was also contrary to law. However, Arun provides no basis for this contention. Although addressed in greater detail below, because we find that the trial court's spousal support order was appropriate, we find no merit to Arun's position that the value of the cognovit judgment could not be utilized to reduce the outstanding spousal support arrearage.

**{¶25}** Arun's sixth assignment of error is overruled.

## B. Retirement Funds

**{¶26}** In his fifth assignment of error, Arun argues that the trial court erred by not dividing the parties' retirement benefits equally and by guaranteeing a "minimum" amount of benefits to Mona. Specifically, Arun alleges that the trial court erred in dividing his CBHC defined benefit pension equally while allowing Mona to retain the

entirety of her annual OPERS benefits of $24,875.76, which Arun argues far exceed his annual OPERS benefits of $8,237.71.

{¶27} As stated, the division of marital property includes retirement benefits that were acquired during the marriage. R.C. 3105.171(A)(3)(a)(ii). However, R.C. 3105.171(C) clearly provides that where an equal division would be inequitable, a trial court may not divide the marital property equally but instead must divide it in the manner that the court determines to be equitable. In order to determine what is equitable, a trial court must consider the factors set forth in R.C. 3105.171(F).

{¶28} In the instant case, the trial court stated that although the division of property in this matter was unequal, "it was equitable due to the financial misconduct committed by [Arun] during the course of this litigation." Pursuant to R.C. 3105.171(E)(4), "if a party has engaged in financial misconduct, including the dissipation, concealment or nondisclosure of assets, the court may compensate the other party with a greater share of marital assets." Thus, an "equal" distribution of the parties' retirement benefits was not required in this matter.

{¶29} Nevertheless, we find, on due consideration of all retirement benefits at issue in this matter, that the trial court equally divided the parties' retirement benefits. While Arun argues that Mona's annual OPERS benefits far exceed his own, he fails to account for the large disparity between the parties' social security benefits. *See* R.C. 3105.171(F)(9) (requiring consideration of Social Security benefits when "relevant for

purposes of dividing a public pension"). Therefore, we cannot say that the trial court abused its discretion in allowing Mona to retain her annual OPERS benefits in full.

{¶30} Furthermore, Arun's challenges to the division of his pension plan are without merit. In its opinion, the trial court awarded Mona a one-half marital interest in Arun's CBHC defined pension plan to be set aside in her name through the use of a Qualified Domestic Relations Order. The court found that the value of the pension was $1,630,904 as of December 31, 2009, and that Mona was entitled to no less than $815,452. Here, Arun argues that it was an abuse of discretion to "guarantee" Mona no less than a fixed amount where there was significant evidence presented at trial that the pension plan was underfunded.

{¶31} Arun cites plan actuary Catherine Wolford's testimony on March 9, 2010, to support his argument that the pension plan's liabilities were greater than its assets. However, while the pension was underfunded in late 2008, CBHC vice-president of finance and acting executive director, Luan Hutchinson's subsequent testimony demonstrated that the pension's underfunding had been remedied by September 2010. Moreover, given the amount of control Arun has over the CBHC pension plan, it was not unreasonable or arbitrary for the trial court to award Mona a minimum amount under the plan. Thus, we conclude that the trial court's division of the parties' retirement benefits did not constitute an abuse of discretion.

{¶32} Arun's fifth assignment of error is overruled.

### C. CBHC

**{¶33}** In his first assignment of error, Arun raises several arguments relating to the trial court's determination that his interest in CBHC had a value of $1,500,000. Similarly, in her first cross-assignment of error, Mona argues that the trial court abused its discretion in determining that the value of CBHC was $1,500,000 when evidence presented at trial established that the fair market value of the business was $1,900,000. Because these arguments are closely related, we will address them together.

### 1. Arun's Motion in Limine

**{¶34}** Initially, Arun claims that the trial court improperly denied his March 8, 2010 motion in limine. In his motion, Arun urged the magistrate to prohibit Mona from offering any evidence or testimony regarding the valuation of CBHC, including the valuation report submitted by Mona's expert witness, Robert Ranallo. Arun argued that preclusion was appropriate based on Ranallo's failure to appear at a scheduled deposition.

**{¶35}** At the outset, we note that "[t]he denial of a motion in limine is within the sound discretion of the trial court." *State v. Werfl*, 11th Dist. Lake Nos. 2002-L-101 and 2002-L-102, 2003-Ohio-6958, ¶ 64. Accordingly, we shall not disturb the trial court's ruling absent an abuse of discretion. *Id*.

**{¶36}** Here, the record reflects that Ranallo did not appear at the March 4, 2010 deposition because he had not yet completed his expert report. As discussed further below, Ranallo's inability to complete his expert report was attributed to Arun's failure to timely provide Mona with financial records for the year 2008. For this reason, the magistrate declined to exclude Ranallo's testimony and valuation report. Instead, the

magistrate found that Arun had sufficient time following the submission of Ranallo's report, but before Ranallo was scheduled to testify, to reschedule a deposition for Ranallo that would work for all parties involved. However, Arun made no such attempt following the court's order. Under these limited circumstances, we find that the trial court acted within its discretion in denying Arun's motion in limine.

## 2. Timeliness of the Expert Reports

{¶37} Next, Arun maintains that the trial court abused its discretion in admitting Ranallo's expert report and allowing Ranallo to testify at trial where his report was not submitted to defense counsel until after trial had commenced. Arun further contends that it was "inequitable, contrary to law, and simply unfair" to exclude the expert report and rebuttal testimony of Arun's expert witness, Bernard Agin. We disagree.

{¶38} A trial court's ruling as to the admission or exclusion of testimony is within its broad discretion and will not be disturbed absent an abuse of discretion. *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 687 N.E.2d 735 (1998).

{¶39} After a careful review of the extensive procedural history of this case, we agree with the magistrate's detailed discussion attributing the delay in Ranallo's submission of his expert report to Arun's conduct. The record reflects that although Arun was ordered on May 11, 2009, to advance Mona $5,000 so that she could retain an expert, those funds were not delivered to Mona until November 10, 2009. Further, once Mona retained Ranallo, Arun continuously delayed Ranallo's ability to complete his valuation report by failing to provide necessary documentation, including vital tax

returns, and by refusing to cooperate with Ranallo's repeated requests to conduct a management interview and site visit at CBHC. Thus, Ranallo's ability to produce and submit a timely expert report was thwarted by Arun's conduct throughout the discovery process and his repeated failure to comply with orders of the lower court. Thus, we are unable to conclude that the trial court abused its discretion in accepting Ranallo's expert report.

{¶40} Moreover, we are unable to conclude that the trial court abused its discretion in excluding the valuation report of Arun's expert, Bernard Agin. Throughout these proceedings, the parties were well aware that the value of CBHC was a highly contested issue in this divorce. Nevertheless, Arun waited until late September 2010, or six and one-half months into trial, before disclosing Agin as a witness and submitting his expert report. Based on the untimely nature of Arun's disclosure of Agin's report, the magistrate excluded the portion of Agin's report relating to his valuation of CBHC, but permitted Agin to provide rebuttal testimony in relation to the methodology employed by Ranallo in valuing CBHC.

{¶41} We find that the trial court acted within its discretion in limiting the scope of Agin's rebuttal testimony. While the record demonstrates that many of the delays associated with the production of Ranallo's expert report are attributable to Arun's conduct, Arun's untimely production of Agin's expert report was not caused by Mona's conduct. Thus, the magistrate properly determined that Mona would have been

prejudiced by the admission of such a late report. *See Hissa v. Hissa*, 8th Dist. Cuyahoga Nos. 79994 and 79996, 2002-Ohio-6313, ¶ 15.

### 3. The Business Valuation

**{¶42}** Finally, Arun argues that the trial court erred in valuing his interest in CBHC at $1,500,000. Arun contends that, given the business liabilities and limited assets, the trial court should have determined that CBHC had no fair market value.

**{¶43}** When determining the value of marital assets, a trial court is not confined to the use of a particular valuation method, but can make its own determination as to valuation based on the evidence presented. *James v. James*, 101 Ohio App.3d 668, 681, 656 N.E.2d 399 (2d Dist.1995). Thus, we must affirm a trial court's determination if it is supported by competent, credible evidence and is not otherwise an abuse of discretion. *Moro v. Moro*, 68 Ohio App.3d 630, 637, 589 N.E.2d 416 (8th Dist.1990). An abuse of discretion implies that the court's attitude is arbitrary, unreasonable, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219, 450 N.E.2d 1140 (1983).

**{¶44}** In challenging the trial court's reliance on Ranallo's opinion of CBHC's value, Arun argues that Ranallo's expert report failed to comply with evidentiary mandates of Evid.R. 702(C), and therefore should have been excluded.

**{¶45}** "A ruling concerning the admission of expert testimony is within the broad discretion of the trial court and will not be disturbed absent an abuse of discretion." *State v. Primeau*, 8th Dist. Cuyahoga No. 97901, 2012-Ohio-5172, ¶ 57.

**{¶46}** Evid.R. 702 governs the admissibility of expert testimony. It provides:

A witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

 (C) The witness' testimony is based on reliable, scientific, technical, or other specialized information. * * *

**{¶47}** Here, Arun does not challenge Ranallo's qualifications.  Instead, he argues that Ranallo's methodology was unreliable due to his unfamiliarity with CBHC and its business structure.

**{¶48}** Whether an expert's opinion is admissible depends on whether the principles and methods employed by the witness to reach his opinion were reliable and not on whether his conclusions are correct.  *Bike Athletic Co.*, 80 Ohio St.3d at 611, 1998-Ohio-178, 687 N.E.2d 735 (1998).  *See also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-593, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

**{¶49}** In the case at hand, Ranallo opined, using the "capitalization of earnings method," that the value of Arun's interest in CBHC was $1,919,000 as of December 31, 2008.  In arriving at this value, Ranallo added back the annual cost of the CBHC defined pension plan and the cash surrender value of the CBHC officer life insurance policies valued at $601,738.  In adding back the costs of the pension plan and life insurance policies, Ranallo testified that they were non-operating or non-recurring assets that are

"discretionary in nature." As such, Ranallo made a "normalized adjustment" to add back the costs of the assets in each of the years analyzed.

{¶50} Although Ranallo testified that his valuation opinion was based on a reasonable degree of accounting certainty, he admitted in his expert report that

> [d]ue to limited access to information and management, [his] analysis was not subject to the development or reporting standards set forth in the American Institute of Certified Public Accountants Statement of Standards for Valuation Services No. 1 (AICPA) nor the valuation standards as promulgated by the National Association of Certified Valuation Analysts (NACVA).

In particular, Ranallo stated that, although requested, he was not furnished the following information that could have impacted his determination of value:

> (1) access to management or the opportunity to interview management * * *; (2) detail of certain balance sheet and income statement accounts; (3) corporate governance documents, significant contractual relationships, and other relevant business information; (4) details of previous ownership transactions; (5) budgets and/or projections for the company; and (6) organizational chart depicting corporate structure.

{¶51} In developing his report, Ranallo relied on CBHC's tax returns and financial statements from December 31, 2005 through December 31, 2008. Arun alleges that, because Ranallo's opinion was based primarily on financial documents, Ranallo had a lack of knowledge concerning CBHC's day-to-day operations, and therefore an insufficient foundation to construct an opinion as to its value. Specifically, Arun contends that Ranallo was unfamiliar with relevant aspects of CBHC, including Medicare and Medicaid regulations, the funding requirements for CBHC's defined pension plan, and the transferability of the company's license. However, Ranallo's testimony at trial

demonstrates that his lack of knowledge concerning the intricacies of CBHC derived primarily from Arun's refusal to consent to a site visit or a management interview, as evidenced by a letter sent to plaintiff's counsel dated April 28, 2010.

{¶52} In our view, Arun should not be rewarded for such conduct. As the magistrate noted, "[this] court cannot allow [Arun's] refusal to grant a management interview to prevent [Mona] from establishing a crucial part of her case, the value of the business." Accordingly, we find any error associated with the basis of Ranallo's opinion to be invited. *Tyler v. Tyler*, 8th Dist. Cuyahoga No. 93124, 2010-Ohio-1428, ¶ 32 ("If a party elects to be less than forthcoming in the presentation of evidence, he has a right to do so, and any error resulting therefrom must be 'invited'").

{¶53} Thus, within the confines of the information provided to him, we find that Ranallo's testimony and valuation report were reliable and based on a reasonable application of his disciplines, practices, and knowledge of the facts of this case. The record demonstrates that Ranallo considered relevant literature in his field and all financial data available to him, including CBHC's relevant tax returns and audited financial statements. Accordingly, we find no abuse of discretion in the court's reliance on Ranallo's opinion as to the value of CBHC.

{¶54} With respect to Mona's cross-appeal, we note that on cross-examination, Ranallo was asked to hypothetically consider the difference in CBHC's value if he did not make a normalized adjustment for the defined pension plan. Although reluctant to answer hypothetical questions, Ranallo determined that, if he did not "normalize out" the

pension plan, CBHC would have a hypothetical value of $231,188. Once Ranallo made this hypothetical calculation, the following statements were made:

DEFENSE COUNSEL: Okay, that's 231 versus 1.9 million, correct?

RANALLO: No. No. That's — that's 231 against a million five thirty.

DEFENSE COUNSEL: 231 against a million five thirty?

RANALLO: Because the million five thirty or the 231, we would add the normalizing adjustment for the —

DEFENSE COUNSEL: I didn't want you to state to us —

RANALLO: I'm trying to be real clear.

DEFENSE COUNSEL: So, it's 231 now versus 1.5, correct?

RANALLO: Correct.

{¶55} Based on this exchange, the magistrate determined that

Ranallo modified his opinion based on certain assumptions regarding the pension plan given to him by defendant's counsel and reduced his opined value to 1.5 million dollars. The court finds that the assumptions he was asked to assume are applicable in this case as they reflect the financial realities of CBHC and that his reduced opined value of $1,500,00 is the appropriate value for the parties' business entities.

{¶56} After a careful review of the record and the entirety of Ranallo's cross-examination, we find that the magistrate erred in concluding that Ranallo had modified his opinion as to the value of the company. At no point during his cross-examination did Ranallo express that the posed hypothetical questions "reflected the financial realities of CBHC," nor did he affirmatively state that he had reduced his opinion of the value to $1,500,000. Moreover, this court finds that the magistrate's

interpretation of Ranallo's statements does not accurately reflect the context of his testimony. In our view, when Ranallo stated that the value changed from "231 versus a million five thirty," he was referring to the value of the company before the normalized adjustment for the life insurance policy, worth $601,738, was made. In fact, the above exchange reflects that Ranallo attempted to explain this to defense counsel when he stated, "[b]ecause the million five thirty or the 231, we would add the normalizing adjustment for the —." However, Ranallo was cut off before he could clarify that the "million five thirty or the 231" did not include the adjustment made for the life insurance policy.[2]

{¶57} Based on the foregoing, we find that the trial court erred in concluding that the appropriate value of CBHC was $1,500,000. Consequently, we reverse the trial court's valuation of Arun's interest in CBHC and remand to the trial court to determine whether Ranallo's opined value of $1,919,000 is appropriate.

{¶58} Arun's first assignment of error is overruled. However, Mona's first cross-assignment of error is sustained.

---

[2] Ranallo's expert report supports this court's finding. In his report, Ranallo explains that when the adjustments for the pension plan were made, "the value of CBHC on a marketable, controlling interest basis is $1,530,00, as set forth in Exhibit 4." However, Ranallo then explains that when he made the adjustment for the CSV life insurance policy, he arrived at a "controlling, marketable interest value of * * * approximately $2,132,000." Ranallo then applied a 10 percent discount for lack of marketability to the $2,132,000 figure, to arrive to his opined value of $1,919,000.

**III. Support Orders**

## A. Temporary Spousal Support

{¶59} On filing for divorce, Mona requested temporary spousal support. On December 2, 2008, the trial court ordered Arun to pay $8,000 per month as support pendente lite commencing June 19, 2008. Within 30 days of this order, Arun placed himself on medical leave from CBHC and stopped drawing a salary. At the conclusion of trial, the magistrate reduced the temporary support order to $7,000 per month retroactive to January 15, 2009. The magistrate reasoned that the decision to reduce the support order by $1,000 per month was equitable given the fact that Arun was no longer receiving wages from CBHC.

{¶60} In his third assignment of error, Arun argues that the trial court erred by failing to reduce the temporary spousal support order to zero during the pendency of the divorce action based on Arun's disability, age, and lack of earned income.

{¶61} R.C. 3105.18(B) authorizes the trial court to award reasonable temporary spousal support to either party during the pendency of any divorce or legal separation proceeding.

{¶62} In challenging the temporary spousal support order, Arun initially argues that the order was improper based on the court's failure to hold a hearing on the issue, as required under Civ.R. 75(N).[3] In the instant case, Arun filed a motion challenging the

---

[3] Civ.R. 75(N)(1) authorizes the trial court to grant spousal support pendente lite to either party without oral hearing upon the filing of a motion and supporting affidavit. The opposing party may then submit counter affidavits within 14 days of the filing of the motion. Civ.R. 75(N)(2).

temporary spousal support order pursuant to Civ.R. 75(N)(2) on December 11, 2008.

Civ.R. 75(N)(2) states, in relevant part:

> Upon request, in writing, after any temporary spousal support * * * is journalized, the court shall grant the party so requesting an oral hearing within twenty-eight days to modify the temporary order. A request for oral hearing shall not suspend or delay the commencement of spousal support or other support payments previously ordered or change the allocation of parental rights and responsibilities until the order is modified by journal entry after the oral hearing.

{¶63} After a careful review of the record, it is clear that a Civ.R. 75(N)(2) hearing was not completed in this matter. Here, the magistrate held a hearing on May 19, 2009, after several continuances, to address Arun's motion to modify the temporary support order. In fact, the magistrate stated at the onset of the hearing that "this hearing is solely for the purpose of hearing the arguments about the order for support." However, defense counsel failed to address the merits of Arun's Civ.R. 75(N)(2) motion. Instead, defense counsel raised matters unrelated to the temporary support order, including issues concerning Mona's domicile and the jurisdiction of the court. In our view, such conduct equates to invited error. The invited error doctrine states that "a party is not entitled to take advantage of an error that he himself invited or induced." *State ex rel. Kline v. Carroll*, 96 Ohio St.3d 404, 2002-Ohio-4849, 775 N.E.2d 517; *State v. Smith*, 148 Ohio App.3d 274, 2002-Ohio-3114, 772 N.E.2d 1225 (8th Dist.).

{¶64} Moreover, even if this court were to find that the trial court acted improperly by failing to complete the hearing within 28 days of Arun's motion pursuant to Civ.R. 75(N)(2), this failure does not necessarily constitute a reversible error. It is incumbent

upon Arun to demonstrate that he was prejudiced by the failure of the court to hold a hearing. *Thorp v. Thorp*, 11th Dist. Trumbull No. 2010-T-0038, 2011-Ohio-1015, ¶ 39. "When a party is able to fully litigate the issues regarding temporary support orders during the final divorce trial, the trial may constitute the Civ.R. 75(N)(2) hearing on temporary support orders." *Id.*, citing *Doody v. Doody*, 11th Dist. Lake No. 2006-L-200, 2007-Ohio-2567, ¶ 44.

{¶65} Here, Arun was not prevented from litigating the issue of temporary support at trial and, in fact, the issue was raised during the testimony of both parties and addressed in the magistrate's decision, as evidenced by the court's order to reduce the temporary support order by $1,000 from the date Arun went on medical leave. Thus, "[t]he divorce trial itself became a Civ.R. 75[(N)] hearing on the amount of reasonable temporary support." *Doody* at ¶ 44. Given these circumstances, the court's failure to hold a pretrial hearing on the temporary order did not constitute an abuse of discretion.

{¶66} With respect to the amount of support ordered, Arun claims that the court erred in calculating the temporary support at $7,000 based on the significant reduction in his income following his retirement.

{¶67} After a careful review of the relevant documentation evidencing the parties' income during the relevant time periods, we find no merit to Arun's reliance on his retirement in early 2009. At trial, Mona presented Arun's 2007 and 2008 tax returns, which indicated that while Arun was serving as the president of CBHC he earned a total estimated income of $796,653 in 2007 and $478,856 in 2008. The evidence further

demonstrated that Arun continued to derive a substantial income, even after his medical leave on January 15, 2009. While Arun was no longer receiving a salary, he was receiving social security and OPERS benefits, income from his business, and funds from his pension and annuities. This amounted to a total estimated income of $440,926 in 2009 and $193,114 in 2010. In contrast, Mona's total estimated income was $22,557 in 2007, $23,406 in 2008, and $24,875.76 in 2009. Based on these figures, the court's temporary sposual support order was reasonable and did not equate to an abuse of discretion.

{¶68} Arun's third assignment of error is overruled.

## B. Permanent Spousal Support

{¶69} In his fourth assignment of error, Arun argues that the trial court erred by awarding unreasonable and inappropriate spousal support to Mona.

{¶70} In determining whether to grant spousal support and in determining the amount and duration of the payments, the trial court must consider the factors listed in R.C. 3105.18. *Robinson v. Robinson*, 8th Dist. Cuyahoga No. 97933, 2012-Ohio-5414. The factors the trial court must consider include: each party's income, earning capacity, age, retirement benefits, education, assets and liabilities, and physical, mental, and emotional condition; the duration of the marriage; their standard of living; inability to seek employment outside the home; contributions during the marriage; tax consequences; and lost income due to a party's fulfillment of marital responsibilities. R.C. 3105.18(C)(1)(a)-(m). In addition, the trial court is free to consider any other factor that the court finds to be "relevant and equitable." R.C. 3105.18(C)(1)(n).

**{¶71}** The trial court is not required to comment on each statutory factor; the record need only show that the court considered the statutory factors when making its award. *Kaletta v. Kaletta*, 8th Dist. Cuyahoga No. 98821, 2013-Ohio-1667, ¶ 22, citing *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 96, 518 N.E.2d 1197 (1988). If the record reflects that the trial court considered the statutory factors, and if the judgment contains details sufficient for a reviewing court to determine that the support award is fair, equitable, and in accordance with the law, the reviewing court will uphold the award. *Daniels v. Daniels*, 10th Dist. Franklin No. 07AP-709, 2008 Ohio App. LEXIS 772 (Mar. 4, 2008), *9, citing *Schoren v. Schoren*, 6th Dist. Huron No. H-04-019, 2005-Ohio-2102, ¶ 11.

**{¶72}** In this matter, the trial court sufficiently considered each of the factors set forth in R.C. 3105.18. In its decision, the court found that "it is appropriate and reasonable for [Arun] to pay spousal support to [Mona]" based on the following factors: "[t]he age of the parties; the relative earning potential of the parties in the future; the length of the marriage; [Arun]'s pretrial refusal to pay support to [Mona]; and other factors listed in the Magistrate's Decision." Accordingly, the trial court ordered Arun to pay "the sum of $7,000 per month, plus 2 [percent] processing charge, for an indefinite term, commencing 11/26/2012." The trial court further ordered Arun to pay an additional $500 per month toward the existing arrearage.

**{¶73}** In challenging the trial court's analysis, Arun argues that the trial court erred in finding that his income is "measurably greater that Mona's." Arun contends that the

trial court's order does not consider potential retirement plan liabilities and other debts, such as the mortgage on the Jane Street cooperative apartment. Further, Arun submits that the trial court's analysis ignores the fact that Mona was awarded a substantial interest in CBHC and one-half of his pension plan as part of the parties' property division. Thus, Arun states "the term 'double dip' does not even begin to describe how unreasonable, inappropriate and inequitable the [court]'s decision is with regard to the findings of income and conclusions concerning payment of temporary and permanent spousal support."

{¶74} With respect to Arun's personal liability for proper funding of the CBHC pension plan, the record reflects that there was no underfunding of the plan at the time the trial concluded. Without evidence to support any notion that the pension was underfunded, we are unable to conclude that the trial court erred with respect to its consideration of the parties' retirement benefits, pursuant to R.C. 3105.18(C)(1)(d). Moreover, despite Arun's argument to the contrary, the trial court did consider his potential liabilities associated with the mortgage on the cooperative apartment. In its opinion, the trial court ordered Ritu to pay the mortgage and hold Arun harmless on any debt associated with this property.

{¶75} Finally, we find no merit to Arun's theory of "double dipping." Generally, a trial court may be found to have abused its discretion by allowing the payee spouse to "double dip" when a marital pension is divided as part of the property distribution and is subsequently included as income for purposes of establishing the support obligations of

the payor spouse because the payee spouse receives a portion of that pension in two different forms. *Frederick v. Frederick*, 11th Dist. Portage No. 98-P-0071, 2000 Ohio App. LEXIS 1458 (Mar. 31, 2000). However, in the case at hand, the trial court's support order avoided the issue of double dipping by stating that Arun's obligation to make spousal support payments will terminate once one-half of the marital interest in the CBHC pension plan is transferred to Mona pursuant to a Qualified Domestic Relations Order. Although unusual, we find the framework of the trial court's spousal support order was necessary, under the narrow circumstances of this case, to compel compliance with the divorce decree given Arun's refusal to be forthcoming with his full financial information and his history of failing to follow court orders.

{¶76} Based on the foregoing, we conclude that the decision of the trial court is well supported in the record, and there is competent, credible evidence going to all of the statutory elements for establishing a spousal support order. Therefore, we find no abuse of discretion in connection with this award.

{¶77} Arun's fourth assignment of error is overruled.

## IV.   Attorney Fees

{¶78} In his seventh assignment of error, Arun argues that the trial court erred by requiring him to pay a portion of Mona's litigation expenses and substantially all of her attorney fees.

{¶79} An award of attorney fees in a domestic relations action is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of

discretion. *Wildman v. Wildman*, 5th Dist. Licking No. 12-CA-21, 2012-Ohio-5090.

R.C. 3105.73(A) governs the award of attorney fees and litigation expenses in domestic

relations cases and provides:

> In an action for divorce * * * or an appeal of that action, a court may award all or part of the reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.

> **{¶80}** In the instant case, the court determined

> that due to [Arun]'s conduct during this matter, his refusal to comply with various pretrial orders and discovery, and the fact that [Arun] had control over the vast majority of the parties' assets and income, that it would be equitable for [Arun] to pay a portion of [Mona's] attorney fees and litigation expenses.

Accordingly, the court ordered Arun to pay "as additional property division" $110,000 in

attorney fees and $20,000 in litigation costs.

**{¶81}** After a careful review of the record, we find ample evidence to support the

trial court's finding that Arun's conduct caused Mona to incur additional fees and

expenses. Under these circumstances, we find that the trial court did not abuse its

discretion, and the decision regarding attorney fees and costs is supported by competent,

credible evidence. *See, e.g., Klayman v. Luck*, 8th Dist. Cuyahoga Nos. 97074 and

97075, 2012-Ohio-3354; *Bain v. Levinstein*, 8th Dist. Cuyahoga No. 94313,

2010-Ohio-5596.

**{¶82}** Arun's seventh assignment of error is overruled.

## V. Contempt

**{¶83}** In his eighth assignment of error, Arun argues that the trial court erred by finding him in contempt in regard to the temporary support issues. Specifically, Arun contends that the trial court's failure to conduct a Civ.R. 75(N) hearing rendered the temporary support order void and invalid. Thus, Arun submits it was unlawful to find him in contempt and impose sanctions where the underlying order was void.

**{¶84}** In its opinion, the trial court found Arun to be in contempt "for failing to pay the temporary support orders, to obey other pretrial court orders, and produce a signed and notarized pretrial statement." The court sentenced Arun to 30 days in jail or, in the alternative, to perform not less than 200 hours of community service in lieu of actual incarceration. The court stipulated that the sentence would be purged provided Arun pays spousal support in the sum of $150,000.

**{¶85}** At the outset, we recognize that an appellate court will not overturn a trial court's finding of contempt absent an abuse of discretion. *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11, 417 N.E.2d 1249 (1981). "Contempt is a disregard of, or disobedience to, an order or command of judicial authority." *First Bank of Marietta v. Mascrete, Inc.*, 125 Ohio App.3d 257, 263, 708 N.E.2d 262 (4th Dist.1998). The contempt process was created "to uphold and ensure the effective administration of justice[,] * * * to secure the dignity of the court[,] and to affirm the supremacy of law." *Cramer v. Petrie*, 70 Ohio St.3d 131, 133, 637 N.E.2d 882 (1994).

**{¶86}** "[T]he burden of proof for civil contempt is clear and convincing evidence." *Delawder v. Dodson*, 4th Dist. Lawrence No. 02CA27, 2003-Ohio-2092, ¶ 10. Before the imposition of a sentence for civil contempt, the trial court must afford the contemnor an opportunity to purge himself of the contempt. *Id.* "The contemnor is said to carry the keys of his prison in his own pocket since he will be freed if he agrees to do as so ordered." *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253, 416 N.E.2d 610 (1980). Typically, a failure to pay court-ordered spousal support is a civil contempt. *Lemke v. Lemke*, 8th Dist. Cuyahoga No. 94557, 2011-Ohio-457, ¶ 44.

**{¶87}** Initially, we note that, as previously addressed, the absence of a Civ.R. 75(N) hearing in this matter did not render the temporary support order void. As discussed, the trial court scheduled a Civ.R. 75(N) hearing, but Arun failed to argue the merits of his motion during said hearing. Nevertheless, the issues that would have been raised at the Civ.R. 75(N) hearing were ultimately addressed at trial. Thus, the failure to hold a Civ.R. 75(N) hearing does not render the temporary spousal support order void, and any raised error associated with the trial court's failure to hold a Civ.R. 75(N) hearing prior to trial was invited by Arun and his counsel.

**{¶88}** With respect to the merits of the trial court's contempt order, we note that a party establishes a prima facie case of contempt by showing the non-payment of a spousal support order. *See King v. King*, 11th Dist. Geauga Nos. 2012-G-3068 and 2012-G-3079, 2013-Ohio-2038, ¶ 24. Once non-payment has been established, the burden shifts to the alleged contemnor to establish any defense he may have for

non-payment, including his inability to pay. *Id.* *See also Pugh v. Pugh*, 15 Ohio St.3d 136, 472 N.E.2d 1085 (1984).

**{¶89}** In the case at hand, Arun was ordered to pay $8,000 per month as temporary spousal support commencing June 19, 2008. However, Arun simply refused to comply with the terms of the court's order and has not met his burden of establishing an inability to pay. Further, Arun has failed to present any evidence or case law to support his position that the trial court's purge conditions were unreasonable or impossible for him to satisfy. *Marx v. Marx*, 8th Dist. Cuyahoga No. 82021, 2003-Ohio-3536, ¶ 22.

**{¶90}** For these reasons, the trial court did not abuse its discretion in finding Arun in contempt for failing to comply with the court's temporary spousal support order.

**{¶91}** Arun's eighth assignment of error is overruled.

### Mona's Cross-Appeal

### I. Shareholder Loan

**{¶92}** In her second cross-assignment of error, Mona argues that the trial court erred and abused its discretion in omitting the shareholder loan from the property division and not awarding it to Mona or Arun or allocating it between the parties. We agree.

**{¶93}** As reflected in CBHC's 2008 tax return, CBHC has a shareholder loan payable to Arun in the sum of $405,071 as of December 31, 2008. In our view, the shareholder loan was made from funds acquired during the parties' marriage, and therefore must be considered marital property. In completing his expert report, Ranallo considered the shareholder loan as a liability of CBHC. As explained by Ranallo, if a

hypothetical buyer purchased CBHC for its fair market value, it would assume the liability owed under the shareholder loan. In other words, in addition to paying Arun the fair market value of CBHC, the purchaser "would come in immediately owing [Arun] the [value of the loan]."

{¶94} Because the shareholder loan was made with marital funds during the parties' marriage, we find that the trial court erred in failing to allocate the value of the loan when dividing the parties' marital property.

{¶95} Accordingly, Mona's second cross-assignment of error is sustained, and the matter is remanded for equitable division of the shareholder loan.

## II. Marital Debt

{¶96} In her third cross-assignment of error, Mona argues that the trial court erred and abused its discretion in determining that the line of credit account with KeyBank is a marital debt. Mona contends that the trial court's consideration of the line of credit as a marital debt greatly impacted the determined equity in the parties' marital home, located at 6584 SOM Court, Mayfield Village, Ohio 44143 ("SOM Court property").

{¶97} The property to be divided in a divorce proceeding includes not only the assets owned by the parties, but also any debts incurred by the parties. *Marrero v. Marrero*, 9th Dist. Lorain No. 02CA008057, 2002-Ohio-4862, ¶ 43. "Marital debt has been defined as any debt incurred during the marriage for the joint benefit of the parties or for a valid marital purpose." *Gupta v. Gupta*, 8th Dist. Cuyahoga No. 99005,

2013-Ohio-2203, ¶ 51, citing *Ketchum v. Ketchum*, 7th Dist. Columbiana No. 2001 CO 60, 2003-Ohio-2559, ¶ 47.

{¶98} For the purpose of clarifying some apparent confusion associated with the lines of credit at issue in this matter, we find it necessary to note that, as evidenced by defendant's exhibit HHH, Arun obtained two separate home equity lines of credit during the parties' marriage. The first line of credit was with KeyBank. The KeyBank line of credit was taken out in the names of Arun and Mona and had a balance of $224,650.07 at the time Mona's complaint for divorce was filed. However, the evidence presented at trial demonstrated that this line of credit had an outstanding balance of $225,106.28 as of December 15, 2009.

{¶99} The second line of credit was with National City Bank. The record reflects that the National City line of credit was taken out by Arun, individually, on November 20, 2007, and had an outstanding balance of $235,970.13 as of December 18, 2009. The National City line of credit was secured by the SOM Court property.

{¶100} With respect to the line of credit with KeyBank, the record reflects that its outstanding balance was paid in full on December 18, 2009. Nevertheless, the trial court determined that the KeyBank line of credit was a marital debt, and it utilized the paid-off value of $225,106.28 to determine the available equity in the SOM Court property.

{¶101} After a careful review of the record in its entirety, we find that the trial court erred in utilizing the KeyBank balance to determine the parties' marital debt. As stated, at the time of trial, the outstanding balance on the Key Bank account had been paid

in full from the proceeds from the November 2009 sale of the parties' property at 6770 Sandalwood Drive, Mayfield Village, Ohio. (Plaintiff's exhibit No. 55.) Therefore, the trial court's use of the $225,106.28 figure was improper because the marital debt associated with the KeyBank account no longer existed and had been paid in full with marital assets.

{¶102} Accordingly, the National City line of credit secured against the SOM Court property was the only outstanding marital debt the trial court should have considered when determining the equity in the property. It appears that the trial court's error in utilizing the KeyBank account to determine the equity in the SOM Court property was caused by the magistrate's statements at page 31 of its decision, where the court seems to have commingled the two separate accounts, with two separate banks, and treated them as one account.

{¶103} Based on the foregoing, we find it necessary to remand this matter so that the trial court can properly determine the appropriate value of the marital debt associated with the outstanding balance of the National City line of credit. We note that on remand, the trial court will be required to address Mona's arguments relating to Arun's withdrawals against the National City line of credit while a court-ordered temporary restraining order was in place. As argued by Mona, the National City line of credit had an outstanding balance of $124,438 as of June 18, 2008. However, as evidenced by plaintiff's exhibit No. 48 and defendant's exhibit HHH, Arun made numerous withdrawals against the National City line of credit, thereby increasing the outstanding

balance of the line of credit to $235,970.13 as of December 18, 2009. Accordingly, on remand, the trial court must consider whether Arun's withdrawals against the National City line of credit following the imposition of the temporary restraining order were done for a "valid marital purpose" in order to determine the value of the parties' marital debt in the account.

{¶104} We note that the burden of proof lies with Mona to establish that the withdrawals made after June 19, 2008, were not made for a marital purpose. *See Gupta* at ¶ 51 ("[t]he party seeking to establish a debt is separate rather than marital bears the burden of proving this to the trial court").

{¶105} Mona's third cross-assignment of error is sustained.

### III. Valuation of Marital Home

{¶106} In her fourth cross-assignment of error, Mona argues that the trial court erred and abused its discretion in determining that the fair market value of the SOM Court property was $351,500.

{¶107} In the case at hand, Arun purchased the SOM Court property for $399,900 on April 3, 2007. However, the record reflects that, prior to trial, the SOM Court property was appraised and valued at $351,500. In determining the value of the property for the purposes of dividing the marital property, the magistrate concluded that the appraisal was "the best evidence available as to the current value of the marital residence."

{¶108} In a divorce proceeding, the trial court must place a value on each contested item of property in order to divide the property equitably. *Pawlowski v. Pawlowski*, 83 Ohio App.3d 794, 615 N.E.2d 1071 (10th Dist.1992). Valuing property involves factual inquiries requiring an appellate court to apply a manifest weight of the evidence standard of review. *Gentile v. Gentile*, 8th Dist. Cuyahoga No. 97971, 2013-Ohio-1338, ¶ 73, citing *Kapadia v. Kapadia*, 8th Dist. Cuyahoga No. 94456, 2011-Ohio-2255. Thus, an appellate court will not reverse a trial court's valuation if it is supported by some competent, credible evidence. *Id.*, citing *Haynes v. Haynes*, 8th Dist. Cuyahoga No. 92224, 2009-Ohio-5360.

{¶109} Moreover, a trial court has broad discretion to develop a measure of value when dividing marital property. *Id.* at ¶ 16. Under the circumstances presented herein, we are unable to conclude that the trial court abused its discretion in utilizing the appraisal to measure the value of the SOM Court property. Although Mona may wish that the home retained its value, the magistrate was well within her discretion to find that the purchase price was not an accurate refection of the property's present value. Accordingly, we find that the magistrate's determination that the fair market value of the SOM Court property was $351,500 is supported by competent, credible evidence.

{¶110} Mona's fourth cross-assignment of error is overruled.

**IV. Incorporation of Magistrate's Findings**

**{¶111}** In her fifth cross-assignment of error, Mona argues that the trial court erred when it failed to incorporate the magistrate's recommendation regarding the allocation of the federal court judgment.

**{¶112}** In its decision, the magistrate stated: "The court finds that Arun's unknown amount of equity in the Jane Street property is marital. * * * Both parties shall equally share the equity Arun has in 61 Jane Street, New York, New York, which exact dollar amount is unknown to the Court."

**{¶113}** In his response brief, Arun concedes that the trial court incorporated the magistrate's findings regarding the federal court judgment when it overruled his objection to the magistrate's opinion regarding that issue. *See* Judgment Entry at 3 ("The Court hereby OVERRULES Defendant's 5th, 6th, 7th, and 8th Objections"). Therefore, we find that the trial court incorporated the magistrate's recommendation in its final entry.

**{¶114}** Mona's fifth cross-assignment of error is overruled.

## V. Arun's Passport

**{¶115}** In her sixth cross-assignment of error, Mona argues that the trial court abused its discretion in sustaining Arun's objection to the magistrate's recommendation that he surrender his passport to the trial court's bailiff.

**{¶116}** A trial court's ruling on objections to a magistrate's decision will not be reversed absent an abuse of discretion. *Gobel v. Rivers*, 8th Dist. Cuyahoga No. 94148, 2010-Ohio-4493, ¶ 16, citing *Remner v. Peshek*, 7th Dist. Mahoning No. 97-C.A.-98, 1999 Ohio App. LEXIS 4802 (Sept. 30, 1999).

**{¶117}** After a careful review of the record and the concerns raised by Mona in her appellate brief, we cannot say that the trial court abused its discretion by sustaining Arun's objection to the magistrate's order requiring him to surrender his passport. While the trial court's order does not address the constitutionality of the magistrate's order, there is nothing in the record to support the magistrate's concern that Arun, a 79-year-old man, is a flight risk.

**{¶118}** Accordingly, Mona's sixth cross-assignment of error is overruled.

**{¶119}** The trial court's judgment is affirmed in part and reversed in part. We remand this case to the trial court to correct the errors set forth in Mona's first, second, and third cross-assignments of error.

It is ordered that appellee and appellant split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, domestic relations division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

LARRY A. JONES, SR., J., and
EILEEN T. GALLAGHER, J., CONCUR

## APPENDIX

**Appellant's Assignments of Error:**

I. The trial court erred in its division of property by admitting the expert report of appellee, by determining that the value of appellant's business was $1,500,000, and by allocating the asset to appellant.

II. The trial court erred in its division of property by not finding that Arun Chattree's interest in the New York "cooperative apartment" was Arun Chattree's separate property and by ignoring a $843,750 liability associated with the asset.

III. The trial court erred by failing to reduce the temporary spousal support order to zero based on Arun Chattree's disability, age, and lack of earned income.

IV. The trial court erred by awarding unreasonable and inappropriate spousal support to appellee.

V. The trial court erred by not dividing appellant's retirement benefits equally and by guaranteeing a "minimum" amount of benefits to appellee.

VI. The trial court erred by concluding that the cognovit judgment against Ritu Chattree was a marital asset and awarding Manorama Chattree and Arun Chattree each a one-half interest in the judgment.

VII. The trial court erred by requiring Arun Chattree to pay a portion of Manorama Chattree's litigation expenses and substantially all of her attorney fees.

VIII. The trial court erred by finding Arun Chattree in contempt in regard to the temporary support order.

**Appellee's Cross-Assignments of Error:**

I. The trial court erred and abused its discretion in determining the value of Community Behavioral Health Center was $1,500,000 when the evidence demonstrated that the fair market value of the business was $1,919,000.

II. The trial court erred and abused its discretion in omitting the shareholder loan from the property division and not awarding it to appellee or appellant or allocating it between the parties.

III. The trial court erred and abused its discretion in determining that the line of credit balance of $224,650.07 is a marital debt.

IV. The trial court erred and abused its discretion in determining that the fair market value of the real property located at 6584 SOM Court, Mayfield Village, Ohio 44143 is $351,500 and consequently decreasing the equity associated with the real property.

V. The trial court erred when it failed to incorporate the magistrate's recommendation regarding the allocation of the federal court judgment.

VI. The trial court abused its discretion in sustaining appellant's objection to the magistrate's recommendation that he surrender his passport to the trial court's bailiff.